953 So.2d 813 (2007)
STATE of Louisiana
v.
Kimberly LAUFF.
No. 06-KA-717.
Court of Appeal of Louisiana, Fifth Circuit.
February 13, 2007.
*815 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Donald Rowan, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
CLARENCE E. McMANUS, Judge.
On January 8, 2004, a Jefferson Parish grand jury returned an indictment against the defendant, Kimberly Lauff, for second degree murder, a violation of LSA-R.S. 14:30.1. The defendant filed a motion to suppress her statements and a motion to quash the indictment, which the trial judge denied. After the State amended the indictment to charge the defendant with manslaughter, the defendant pled guilty to manslaughter under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) and State v. Crosby, 338 So.2d 584 (La.1976), reserving her right to appeal all pretrial motions, including the motion to quash. Thereafter, the trial judge sentenced the defendant to imprisonment at hard labor for 40 years. This timely appeal follows.
Because the defendant entered a guilty plea, this factual statement is developed from the hearings on the motions to suppress and quash and other information in the record.
On November 8, 2003, at approximately 8:30 a.m., a dead baby boy was discovered in a trash receptacle at an apartment complex located at 4209 Arbor Court in Kenner. Detective Brian McGregor spoke to a resident of the complex, Randy Hebert, who is Lauff's boyfriend's brother. Hebert related to Detective McGregor that Lauff and her boyfriend were visiting his apartment on the evening before, and that the defendant went to the hospital after experiencing bleeding.
*816 In her initial statement, made on November 8th to Detective McGregor, 23-year-old Kimberly Lauff explained the events leading up to the discovery of the baby's body. She said that, while at the Hebert's apartment, she began experiencing stomach cramps and thought she needed to use the restroom. While she was sitting on the toilet, a baby boy "popped out." She caught the baby before he hit the water. She wiped him off with a towel and saw the child was not breathing. She cut the umbilical cord with some scissors that were in her purse and called for her boyfriend to come to the bathroom. The child was out of sight and wrapped in a towel when her boyfriend entered. There was blood all over the floor and she was bleeding profusely. Her boyfriend told her that she needed to get cleaned up and then go to the hospital. She showered and put on clean clothes with the assistance of Mrs. Hebert. Lauff remarked to Mrs. Hebert that if Lauff's mother "found out about this," Lauff would never see her children again.[1]
Lauff kissed the child on the forehead and wrapped him up in a towel. She then put her bloodied clothes in a garbage bag. On the way to the car, she placed the bag containing her clothes in a trash can located outside the complex, put the child on top of the bag, and closed the lid. Lauff was admitted to the hospital at 2:36 a.m. on November 8, 2003, and underwent a D & C procedure.
At approximately 12:00 p.m. on November 8th, Detective McGregor went to the hospital, where he had an abbreviated conversation with Lauff. Detective McGregor read Lauff her rights, which she said she understood and she agreed to speak to him. Lauff denied giving birth and said she passed out. At that point, a nurse interrupted the conversation and told Detective McGregor that Lauff had been under a sedative. The nurse said that Lauff was probably clear of the sedative, but that they were waiting on Lauff to use the restroom. The nurse said the sedative would be out of her system at 12:30 p.m. Lauff agreed to go to the police department when she was discharged, and an officer brought her there at approximately 4:15 p.m. At this time, Lauff gave her second statement which was recorded.
Detective McGregor testified that Lauff was informed that she was under investigation for first degree murder. She waived her constitutional rights after another officer, Detective Cunningham, read them to her. She denied knowing that she was pregnant. Lauff claimed that the child was born dead and that she tried to resuscitate the baby by plucking his foot and rubbing his back to no avail. She stated that he never even opened his eyes.
After the statement, Lauff was released because the police did not have the autopsy results. However, Lauff was arrested on November 10, 2003, when the autopsy results revealed that the child was born alive and that the child's death was ruled a homicide. In particular, the State's forensic pathologist, Dr. Ross, found the child was 41 weeks in gestational age and died as a result of "homicidal violence and/or neglect including abandonment. Asphyxia due to suffocation/smothering is a likely cause of death." Drug and alcohol screening detected ethanol in the child's blood and vitreous. Cocaine was found in the child's plasma, vitreous and gastric fluid.
Detective McGregor testified that, after Lauff's arrest on November 10, 2003, she *817 was again advised of and waived her constitutional rights. Detective McGregor told Lauff that the autopsy indicated that the child was born alive and that the child's death was a homicide. This third statement, Lauff's second recorded statement, was largely consistent with the first recorded statement, with the exception of the fact that Lauff admitted she knew she was pregnant. She also said that the baby "flinched" after he was born. She became scared and immediately "wrapped" the baby up in a towel. She also told the officer that she wanted to die after giving birth because she felt she had "messed" her life up again, as well as the life of an innocent child.
Detective McGregor testified that, in both the recorded statements, Lauff cried periodically. However, he said she was very cooperative and coherent in both recorded statements and at the hospital.
In her first allegation of error, defendant alleges that the trial court erred in denying her Motion to Quash.
Initially, it is noted that the defendant's appellate attorney states in the appellate brief that the trial judge's denial of the motion to quash may be rendered moot, given the defendant's decision to plead guilty to manslaughter and considering that the defendant asserted in her motion to quash that the "charges against the defendant may be more appropriate under manslaughter." The defendant nevertheless contends that the trial judge erred in denying her motion to quash the indictment because the State's evidence did not support the charged offense of second degree murder, particularly insofar as there was no evidence of specific intent to kill or to inflict great bodily harm.
In State v. Crosby, supra, the defendants were indicted for first degree murder and filed motions to quash the indictment on the ground that the statute was unconstitutional because it imposed the death penalty. At the completion of the State's case, the defendants pled guilty to second degree murder, but reserved their right to appeal the pre-plea rulings of the trial court to which they objected. The Supreme Court stated as follows: "Since the defendants were not convicted of violating that statute, but instead pleaded guilty to second-degree murder, the assignment is without merit." State v. Crosby, 338 So.2d at 592. (citation omitted).
In the present case, the defendant filed a motion to quash the indictment for second degree murder on the basis that the State lacked the evidence to prove the requisite specific intent. Since the defendant was not convicted of second degree murder, but instead pled guilty to manslaughter, we believe that the reasoning of State v. Crosby, is applicable to this allegation.
LSA-C.Cr.P. arts. 532 and 485 list the general grounds for quashing an indictment, which include the failure of the indictment to charge a punishable offense and when it appears from the bill of particulars that the offense charged was not committed or that the defendant did not commit it. State v. Jordan, 06-187 (La. App. 5 Cir. 9/26/06), 938 So.2d 805. The defendant filed her motion to quash under LSA-C.Cr.P. art. 532(5), which provides in pertinent part:
A motion to quash may be based on one or more of the following grounds:
. . .
(5) A bill of particulars has shown a ground for quashing the indictment under Article 485.
LSA-C.Cr.P. art. 485 provides:
If it appears from the bill of particulars furnished under Article 484, together with any particulars appearing in the *818 indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured. The defect will be cured if the district attorney furnishes, within a period fixed by the court and not to exceed three days from the order, another bill of particulars which either by itself or together with any particulars appearing in the indictment so states the particulars as to make it appear that the offense charged was committed by the defendant, or that there is no ground for quashing the indictment, as the case may be.
Both the Louisiana Supreme Court and this Court have consistently held that a motion to quash is, essentially, a mechanism to urge pre-trial pleas, i.e. pleas which do not go to the merits of the charge. State v. Byrd, 96-2302 (La.3/13/98), 708 So.2d 401, 411, cert. denied, 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998); State v. Billard, 03-319 (La.App. 5 Cir. 7/29/03), 852 So.2d 1069, 1074, writ denied, 03-2437 (La.2/6/04), 865 So.2d 739. At a hearing on such a motion, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. Billard, supra. A court considering a motion to quash must accept as true the facts contained in the bill of information and in the bill of particulars, and determine as a matter of law from the face of the pleadings whether a crime has been charged. Id. While evidence may be adduced on the motion to quash, such evidence may not include a defense on the merits. State v. Byrd, 708 So.2d at 411. The question of factual guilt or innocence of the offense charged is not raised by the motion to quash. Billard, supra.
In the present case, the defendant requested the State to specify the subsection of the second degree murder section under which it intended to proceed. The State responded that it planned to proceed under LSA-R.S. 14:30.1 A(1), which requires the offender to have the specific intent to kill or to do great bodily harm. In response to the defendant's question regarding what evidence the State intended to use to create an inference of specific intent, the State indicated it intended to prove the specific intent through the defendant's two statements and open file discovery.
In her motion to quash and at the hearing on the motion, the defendant suggested that charges of manslaughter or partial birth abortion would be more appropriate instead of second degree murder. The defendant argued that there was no evidence of her intent to kill or to inflict great bodily harm. The defendant also argued that the State could not prove when the child took his first breath or whether the child was alive when placed in the trash can. The defendant pointed to the difference of opinions on the cause of death between the State's forensic pathologist Dr. Ross and expert witness Dr. Krouse. Dr. Ross specifically stated in his report that "Kimberly Lauff, by vaginal delivery, gave birth to a term male infant on the night of 7 November 2003. It was a live birth." Dr. Krouse's report opined that there was "ample evidence of live birth in the lung tissue." He found that there was insufficient evidence to determine that the child died of suffocation or smothering, but that it could not be ruled out. He determined that the most likely cause of death was "maternal drug and alcohol use and abandonment in a dangerous environment following birth."
At the hearing, the State responded that it believed it could prove the requisite *819 specific intent through the defendant's actions. The trial judge stated that he found the State's answers to the bill of particulars were sufficient, and that the State had enough evidence to proceed. Immediately thereafter, the defendant pled guilty to manslaughter.
In the present case, defendant raised no issue regarding the sufficiency of the indictment. Also, she has not argued that the indictment was defective in failing to advise her of the specific crime with which she was charged, or that it failed to charge a valid offense. Rather, the issues raised in the defendant's motion to quash relate solely to her guilt or innocence, in that she contends the State's evidence could not prove the requisite intent for murder beyond a reasonable doubt. Because these issues are factual matters that relate to the merits of the case, they were not properly raised in a motion to quash. See, State v. Billard, 852 So.2d at 1074. We find that the trial judge properly denied the defendant's motion to quash.
At the end of her assignment, the defendant asserts in two sentences that she was denied due process because the State was allowed to threaten the defendant into pleading guilty to manslaughter because the State over-charged the indictment. Notably, the defendant does not ask to withdraw her guilty plea as involuntary. Nor does she brief this position. According to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. Restating an assigned error in brief without argument or citation of authority does not constitute briefing. State v. Inzina, 31,439 (La.App. 2 Cir. 12/9/98), 728 So.2d 458, 469. In State v. Fernandez, 03-987 (La.App. 5 Cir. 12/30/03), 864 So.2d 764, 770, this Court found that the defendant failed to brief his position where he merely asserted his position, but failed to include argument or any legal citation in support thereof. The Fernandez court found that the assertions presented nothing for review on appeal. As in Fernandez, the defendant herein has not briefed this position and that it presents nothing for review on appeal.
In her second allegation of error, the defendant argues that the trial court erred in denying the Motion to Suppress. She contends that her statements were involuntary because her mental and physical conditions were impaired by the loss of blood and by the cocaine and alcohol she had consumed. The State responds that the trial judge properly denied the motion to suppress.
In order for a statement or confession to be admissible at trial, the State must affirmatively show that it was made freely and voluntarily, without inducements, threats, or promises. State v. Tate, 98-117 (La.App. 5 Cir. 5/27/98), 714 So.2d 252, 255-256. If the statement was elicited during custodial interrogation, the State must also prove that defendant was advised of his or her Miranda rights.[2]See, State v. Tate, at 255. Intoxication only renders a statement involuntary when the intoxication is of such a degree that it negates the defendant's comprehension and renders him unconscious of the consequences of what he or she is saying. State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866. The trial court's conclusions on this issue will not be disturbed unless unsupported by the evidence. Id. A trial judge's determination *820 on the admissibility and his conclusions on the credibility and weight of the testimony relating to the voluntariness of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. State v. Quest, supra.
In the present case, the defendant made three statements to the police: an abbreviated statement in the hospital at approximately 12:00 p.m. on November 8th; a recorded statement at the police department later on November 8th; and a recorded statement after she was arrested on November 10th. While the defendant contends that her intoxication and mental state rendered her statements involuntary, the record does not support that assertion. Although the child's autopsy report indicated that there were levels of cocaine and alcohol in his body at birth, there was no evidence presented at the motion to suppress hearing that the defendant was rendered incoherent by intoxication at any time she spoke to the police.
In her appellate brief, the defendant claims that Detective McGregor "acknowledged that her mental state on the two times he spoke to her  on both November 8 and November 10  was such that she could not complete her statement without breaking down "sobbing and crying," citing to pages 127 and 131 of the record. However, this is not a precise characterization of Detective McGregor's testimony. On cross-examination, Detective McGregor was asked whether the defendant cried during the first recorded statement. Detective McGregor denied that she cried for the duration and answered that "[s]he had her bouts and periods that she would cry, and sometimes she wouldn't." When asked, "if we had the tape to play, we would hear some of the sobbing and crying," Detective McGregor replied, "Yeah, if it's on the tape, yes sir." Regarding the second recorded statement, Detective McGregor replied that the defendant's demeanor was "[j]ust the same, she'd cry at times, and other times she wouldn't."
Further, Detective McGregor testified that the defendant understood she was under investigation for first degree murder, and that she was coherent and cooperative at the hospital, as well as during the successive recorded statements. In fact, Detective McGregor stated he could not discern from the defendant's appearance that she had been given a sedative at the hospital, but left upon being advised that the sedative would definitely be cleared of the defendant's body by 12:30 p.m. The defendant made the first recorded statement at 5:25 p.m. on November 8th, several hours later. It was two days later, on November 10th, when the defendant made her second recorded statement. Additionally, the defendant signed waiver of rights forms prior to making both recorded statements, indicating that she had been advised of her constitutional rights and that she wanted to waive them. The waiver of rights forms were introduced at the hearing.
After hearing Detective McGregor's testimony and reviewing the waiver of rights forms, the trial judge could have concluded that the defendant's statements were freely and voluntarily given. We find that the trial judge did not abuse his discretion in denying the defendant's motion to suppress.
In her third allegation of error, the defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSC.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. Our review reveals the following error.
The record does not reflect that the defendant was properly advised of *821 the prescriptive period for filing post-conviction relief. LSA-C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. During the plea colloquy, the trial judge stated that the defendant would have "two years from the date the sentence becomes final to file post-conviction relief applications." This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisal incomplete. See, State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 767, 768, citing State v. Grant, 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598. Moreover, the waiver of rights form contains incorrect advice regarding the prescriptive period for filing post-conviction relief because it informed the defendant that any post-conviction relief application had to be filed within "two (2) years of the date of this plea." Accordingly, we remand this matter with instructions for the trial court to inform the defendant of the correct prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant after the rendition of this Court's opinion and filing written proof that the defendant received the notice in the record. See, State v. Roche; State v. Grant, supra.
For the above discussed reasons, the defendant's conviction and sentence are affirmed. We remand the case to the district court with instructions for the trial court to correctly inform the defendant of the prescriptive provisions for seeking post-conviction relief.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.
NOTES
[1] In her second statement, Lauff told Detective McGregor that she had two other children, ages 4 and 5.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).