985 So.2d 851 (2008)
STATE of Louisiana
v.
Hilario G. TREVINO.
No. 07-KA-870.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
Rehearing Denied July 8, 2008.
*852 Paul D. Connick, District Attorney, Terry M. Boudreaux, Juliet Clark, Joseph E. Roberts, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellant.
Windi Akins, Attorney at Law, Houston, TX, for Defendant/Appellee.
Frank G. DeSalvo, Robert R. Blackburn, DeSalvo, DeSalvo & Blackburn, New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS, and GREG G. GUIDRY.
*853 MARION F. EDWARDS, Judge.
In June 2004, the defendant/appellee, Hilario G. Trevino ("Trevino"), and co-defendants, Sergio Garcia Hernandez and Pablo Solis, were charged by the Jefferson Parish District Attorney's Office with a violation of LSA-R.S. 14:230, money laundering, and in count two with money laundering, a violation of LSA-R.S. 14:230. The crimes were alleged to have been committed on October 22, 2003. In March 2005, the State filed a new bill of information charging the defendants in count one with money laundering, a violation of LSA-R.S. 14:230, and in count two with criminal conspiracy to launder money, violations of LSA-R.S. 14:26 and LSA-R.S. 14:230. Trevino, the only defendant before us at this time, pled not guilty to the new charges. On April 18, 2005, Trevino filed several motions, including a Motion to Compel Discovery and a Motion to Suppress Evidence. At a hearing on May 26, 2006, pursuant in part to a Motion to Quash, the State amended the second bill of information in count one to state that, on October 22, 2003, Trevino and his co-defendants knowingly laundered $837,552 in cash money derived from the distribution of cocaine, and in count two, to state that on that same date they knowingly conspired in a criminal conspiracy to launder $837,552 in cash money derived from the distribution of cocaine.
On June 22, 2007, pursuant to the final motion to quash the bill of information by Trevino, the trial court granted the motion to quash. The State takes this timely appeal.
At the motion to suppress hearing, Lieutenant Gerard Simone ("Lieutenant Simone") of the Jefferson Parish Sheriffs Office testified regarding the details of a narcotics investigation in 2003. On August 20, 2003, while working at the New Orleans International Airport, Lieutenant Simone's attention was drawn to a passenger, Ricardo Rivera, as a possible target. His investigation led to Willow Wood Apartments, at 2535 Pasadena Avenue in Metairie. The officer learned that Celestino Rivera, the older brother of Ricardo Rivera, had leased Apartment 121 since December of 2002. The apartment usually was paid for two months at a time by different individuals always using money orders. According to neighbors and individuals associated with the apartment complex, Rivera and his associates were only at the apartment approximately once every two to three weeks, staying several hours, and then departing for another couple of weeks. Members of the cleaning staff and individuals associated with the apartment complex informed Lieutenant Simone "there was very little if any furniture at all in the apartment." The apartment's mailbox was open and appeared to be full of junk mail. Lieutenant Simone believed that the apartment was being used as a transfer point or "stash pad" for illegal activity.
Celestino Rivera's lease indicated that he rented the apartment along with a co-applicant. The lease also listed one truck, although the registration on that truck indicated that it was not registered to Celestino Rivera. A United States Customs Computer System check indicated that the truck listed on the lease had been extensively used for travel back and forth across the Mexican border on a "somewhat regular basis." Lieutenant Simone also learned that Celestino Rivera had indicated that he worked for the PPG company's New Orleans office.
After Special Agent Jonathan Harrison ("Special Agent Harrison") of Immigration and Custom Enforcement joined the investigation, Lieutenant Simone was able to obtain Entergy bills for the apartment. The Entergy bills were in the name of *854 Celestino Rivera, were very small, and were paid in lump sums. According to Lieutenant Simone, Special Agent Harrison contacted PPG in Laporte, Texas, located outside Houston. Special Agent Harrison learned from a PPG employee that Celestino Rivera had been an employee for five years and two months. However, there was no New Orleans office for PPG.
According to Lieutenant Simone, Special Agent Harrison also subpoenaed Southwest Airlines for Ricardo Rivera's travel history, which indicated that he made reservations for quick round trips to New Orleans shortly before he traveled and that he paid in cash. Lieutenant Simone agreed that the Southwest Airlines documents indicated that Ricardo Rivera traveled to New Orleans on July 14, 15, and 22 of 2003 and on August 20, 2003. According to Lieutenant Simone, Special Agent Harrison also subpoenaed the subscriber and toll records for Ricardo Rivera's cell phone, which indicated that the phone was registered to Celestino Rivera. Several numbers associated with the cell phone were tied to at least one ongoing investigation in New Orleans and another in Youngstown, Ohio by the Drug Enforcement Administration ("DEA") looking into narcotic violations, i.e., heroin, cocaine, and hundreds of pounds of marijuana. The investigation included the girlfriend of the DEA's target, who briefly stayed at the Pasadena Street apartment in February of 2003.
Video surveillance equipment was installed at the complex, and, at one point, an individual who appeared to be Ricardo Rivera entered the apartment with a second subject. Several people went in and out of Apartment 121 for a few hours, and additional activity at this location was recorded on subsequent days over a period of several weeks.
On October 22, 2003, at approximately 8:00 p.m., two individuals entered Apartment 121. They left twenty minutes later with empty canvas duffel bags and got into a pickup truck. The truck traveled down the I-10 Service Road, turned onto North Arnoult, and stopped next to a tractor-trailer rig at a vacant shell lot in the 2400 block. There was no observed activity or communication between the two vehicles. The truck left the area but later returned to the shell lot again pulling next to the tractor-trailer rig. The passenger of the truck got out, and two duffel bags that appeared to be the same type taken out of Apartment 121 were thrown from the truck into the open passenger door of the tractor-trailer rig. Then, the passenger from the truck got into the tractor-trailer rig, and the driver of the truck drove to the corner of North Arnoult and the South I-10 Service Road. Lieutenant Simone gave the order to stop the two vehicles.
Lieutenant Simone learned that the driver of the truck was named Pablo Solis ("Solis"). Trevino and Sergio Garcia Hernandez ("Hernandez") were the occupants found in the rig. Lieutenant Simone admitted that, at the time he removed Trevino from the rig, he had not seen him previously enter Apartment 121 or commit a specific criminal act. Hernandez was the individual observed earlier leaving Apartment 121 and initially entering the truck that met the tractor-trailer rig. Hernandez was also the person who threw the two duffel bags from the truck into the tractor-trailer rig. The rig was searched and two black duffel bags were found in a compartment in the floor of the cab of the rig, which was accessed by a hole cut into the floor that was covered with plates. Bundles of U.S. currency wrapped in cellophane were also found in the rig. The money seized totaled $837,552. When questioned at the scene and later at the *855 Detective Bureau, Trevino, Hernandez, and Solis all claimed to know nothing about the currency found in the rig. Solis told Special Agent Harrison that he was purchasing the truck he drove that night from Ricardo Rivera. Trevino, Hernandez, and Solis were all arrested.
Next, Lieutenant Simone searched Apartment 121. In the first search he found a couple of lawn chairs, numerous rolls of plastic wrapping used in food saver packaging, a food saver machine, and a scale. Lieutenant Simone testified that these objects commonly are used by narcotic traffickers to package narcotics and currency for transportation. In a second search of the apartment, later the same day, marijuana residue was found in several areas.
Trevino returned to the Detective Bureau to obtain some personal items. At that time, he again denied knowing anything about the seized currency. Trevino stated that he traveled to New Orleans to find employment on the riverfront, but was unable to give the name of anyone or any business he had contacted. He was also unable to explain why the tractor-trailer rig was parked at the shell lot on North Arnoult.
The record indicates that, on March 17, 2006, the State filed a Motion to Recuse Defense Counsel, alleging that defense counsel had a conflict of interest in her representation of Trevino based upon her representation of Guadalupe Mendoza ("Mendoza"), a person who had been present at the Pasadena Street apartment and who was alleged to belong to a drug trafficking organization. It was further alleged that Trevino "was seen" in the Pasadena Street apartment. The motion asserted that the apartment had been used for the exchange of money and drugs, and evidence would be introduced at trial to show "beyond a reasonable doubt" that Trevino belonged to he same organization. Trevino executed a written waiver of any conflict of interest.
At the hearing on May 26, 2006, the State conceded that it had not allowed complete open file discovery because of an ongoing federal investigation. The court then ordered the State to provide the bill of particulars requested by Trevino in two weeks. Defense counsel also informed the court that she had requested specific information from the State relative to the motion to recuse, specifically the name of each person who allegedly saw her client at the apartment, and the dates it occurred, as well as any and all evidence that showed Trevino and Mendoza were part of the same drug trafficking organization. The court ordered the State to answer, in the bill of particulars, "(1) when was my client (Trevino) seen at the Apt.? (2) Was [sic] Trevino and Mendoza in the same drug trafficking [sic]?"
In its amended response to Trevino's request for a bill of particulars filed on June 19, 2006, the State gave the names of two witnesses who identified Trevino as having been at the apartment, but not when he was seen. In August 2006, Trevino filed a Motion to Compel Answers to Defendant's Application for Bill of Particulars and Representations in the State's Motion to Recuse and Defendant's First Motion for Continuance. In that pleading, Trevino alleged the State failed to provide the information regarding the motion to recuse as ordered by the court on May 26, 2006.
At a hearing May 24, 2007, Trevino informed the court that the State had failed to comply with the court's order to provide the defense with information related to his alleged presence in an apartment used for the drug activity and his participation in the same drug trafficking organization as Mendoza. The State responded that it *856 could not give a specific date on which Trevino was at the apartment. In response to the second question, which the State understood to be whether it was alleging that Trevino and Mendoza were part of the same drug trafficking organization, the State answered, "Yes, they are." The trial judge ordered the State to produce evidence that "[Trevino and Mendoza] were in the same money laundering business" and that Trevino appeared in the apartment where the drug activity took place. The trial judge informed the State that if it did not allege those two facts by June 22, it would grant the motion to quash.
On June 21, 2007, the State filed the following answers:
Question 1. When was Trevino seen in the apartment? The most specific answer the State can give on this point is sometime in the year 2003.
Question 2. Are Trevino and Mendoza in the same drug trafficking organization? To the best of our knowledge they are part of the same organization.
On June 22, 2007, Trevino filed another motion to quash based on the district attorney's alleged failure to furnish a sufficient bill of particulars when ordered to do so pursuant to LSA-C.Cr.P. art. 532(4). Trevino claimed that the State's answers to the two questions were insufficient, noting that if the State had two witnesses, as it claimed in its previous answers to the bill of particulars, then the State should be able to pinpoint when Trevino was in the apartment. In addition, Trevino claimed that the State's response to question number two did not inform the defense of what evidence the State possessed to prove that he and Mendoza were part of the same drug trafficking organization. Defense counsel noted that in the State's Motion to Recuse, the State asserted that it had additional evidence that would be introduced at trial to show that Trevino and Mendoza were part of the same drug trafficking organization. The State responded that it answered the first question and had given the defense open file discovery that included the statements of the two witnesses who saw Trevino in the apartment. The State argued that the admissibility, as well as the weight and sufficiency of the State's evidence should be determined at trial on the merits. The State also contended that it answered the second question as it appeared in the record, i.e., "`Are [the defendant] and Mendoza in the same trafficking organization?'" The trial court granted Trevino's motion to quash after finding that the State's answers were insufficient.
Pursuant to LSA-C.Cr.P. art. 532(4), a motion to quash may be based on the district attorney's failure to furnish a sufficient bill of particulars when ordered to do so by the court. Further, LSA-C.Cr.P. art. 485 states in pertinent part:
If it appears from the bill of particulars. . . together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, . . . the court. . . on motion of the defendant shall, order that the indictment be quashed unless the defect is cured.
When considering a motion to quash, the trial court must accept as true the facts contained in the bill of information and the bills of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged; while evidence may be adduced, such may not include a defense on the merits.[1] Fact-intensive inquiries regarding *857 the sufficiency of the evidence and merits of the case are not properly raised by a motion to quash; rather, they should be decided on the evidence at trial.[2]
In criminal prosecutions, "an accused shall be informed of the nature and cause of the accusation against him." La. Const. Art. I, § 13. The bill of particulars provided for in Article 484 of the Code of Criminal Procedure is a means by which a defendant is so informed. State v. DeJesus, 94-0261, p. 3 (La.9/16/94), 642 So.2d 854, 855. While the bill of particulars is not a means for the defendant to obtain the State's evidence, it should inform of the essential facts of the crime charged. Id. Therefore, if the trial court determines that the bill of information and/or bill of particulars is insufficient, it may quash the charges. La.Code Crim. Proc. Ann. art. 485. DeJesus, supra. An appellate court reviews such a ruling for abuse of discretion. State v. Atkins, 360 So.2d 1341, 1344 (La.1978), cert, denied, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979); State v. Ross, 561 So.2d 1004, 1007 (La.App. 4th Cir.1990), writ denied in part, not considered in part, 594 So.2d 885 (La.1992).[3]
In the present case, according to the State, the prosecutor answered the questions in the record to the best of his ability. According to the record, the State was supposed to answer two questions related to two of the State's offered reasons for why defense counsel should be recused. The State answered the first question related to Trevino's appearance in an apartment by responding, "The most specific answer the State can give on this point is sometime in 2003." The State answered the second question related to Trevino's participation in the same drug trafficking organization, as defense counsel's other client, by responding, "To the best of our knowledge they are part of the same organization."
The defendant cannot use a bill of particulars to obtain the State's evidence.[4] Both the Louisiana Supreme Court and this Court have consistently held that a motion to quash is, essentially, a mechanism to urge pre-trial pleas, i.e., pleas which do not go to the merits of the charge.[5] At a motion to quash hearing, the evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court.[6] When the issues raised in a defendant's motion to quash relate solely to guilt or innocence, in that the defendant contends the State's evidence cannot prove an essential element of the charged offense beyond a reasonable doubt, the issues are factual matters that relate to the merits of the case and, therefore, they are not properly raised in a motion to quash.[7]
In order to prove that Trevino laundered money, the State must prove that the defendant did "knowingly . . . [a]cquire or maintain an interest in, receive, conceal, possess, transfer, or transport the proceeds of criminal activity." LSA-R.S. 14:230(B)(1). "`Criminal activity' means *858 any offense, including conspiracy and attempt to commit the offense, that is classified as a felony under the laws of this state. . . ." LSA-R.S. 14:230(A). LSA-R.S. 14:2(4) defines a felony as "any crime for which an offender may be sentenced to death or imprisonment at hard labor." The offense of distribution of cocaine is punishable by a term of imprisonment at hard labor for not less than two years nor more than thirty years. LSA-R.S. 40:967(B)(4)(b). Therefore, the money made from the distribution of cocaine would be the proceeds of criminal activity.
In order to prove a defendant conspired to launder money, the State must prove that the defendant agreed or combined with two or more persons for the specific purpose of knowingly committing money laundering in order to "[a]cquire or maintain an interest in, receive, conceal, possess, transfer, or transport the proceeds of criminal activity," and that one or more of the parties to the agreement or combination acted in furtherance of the objective to launder the money. LSA-R.S. 14:230(B)(1) and LSA-R.S. 14:26(A). "If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other." LSA-R.S. 14:26(A).
In the present case, Trevino was charged with money laundering and conspiracy to commit money laundering. The specific date that he was in one of the apartments used as a site by the drug trafficking organization for the exchange of money and drugs is not a necessary requirement to prove an element of the charged offenses. In addition, the State is not required to prove that Trevino and another client of defense counsel were in the same drug trafficking organization as an element of either of the charged offenses. Rather, these questions pertained to the State's motion to recuse.
Accepting as true the facts in the amended bill of information along with the bill of particulars and the two included questions, we find that the State has furnished sufficient factual details to adequately inform the defense of the nature and cause of the accusation. LSA-C.Cr.P arts. 485 and 532(4) do not support the judgment at issue here. Therefore, to the extent that the district court granted the motion to quash based upon insufficiency of the bill of particulars, it abused its discretion.
To the extent that the motion to quash may have been granted because the State failed to comply with certain discovery orders pursuant to the motion to recuse, LSA-C.Cr.P. art. 729.5 states:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
Thus, although the article gives the district court broad authority to fashion a remedy for noncompliance with such orders, dismissal of the charge is expressly excluded from the available remedies.
For the foregoing reasons, the judgment quashing the bill of information is reversed and vacated, the bill of information is reinstated, and the matter is remanded for further proceedings.
*859 JUDGMENT REVERSED AND VACATED; BILL OF INFORMATION REINSTATED; REMANDED.
NOTES
[1] State v. Byrd, 1996-2302 (La.3/13/98), 708 So.2d 401; See also, State v. Mulvihill, 03-691 (La.App. 5 Cir. 10/28/03), 860 So.2d 266, 267-68.
[2] State v. Browning, 06-929, p. 6 (La.App. 5 Cir. 4/11/07), 956 So.2d 65, 70 (citation omitted).
[3] State v. Barrow XXXX-XXXX (La.App. 4 Cir. 11/25/98), 724 So.2d 263, 265.
[4] See, State v. DeJesus.
[5] State v. Lauff, 06-717 (La.App. 5 Cir. 2/13/07), 953 So.2d 813.
[6] Id.
[7] See, State v. Lauff, supra.