CARLTON, J.,
for the Court:
¶ 1. In September 2001, Byron L. Brown suffered injuries during his employment at Marshal Durbin.[1] Brown‘ returriéd to work and coiitinued to work for Marshal Durbin until his retirement in 2008. Significantly, Brown retired without seeking alternative positions from Marshal Durbin. Brown' thereafter filed a claim to receive disability compensation, alleging that the worsening of his injuries from 2001 left him unable to continue working. The administrative judge (AJ) determined Brown to be permanently and totally disabled and ordered Marshal Durbin to pay Brown disability benefits for 460 weeks based on his average weekly wage of $629.51. Marshal Durbin appealed to the Mississippi Workers’ Compensation Commission (Commission), which reversed the findings of the AJ.. The Commission found that Brown sustained a fifty percent loss of wage-earning capacity and ordered that Marshal Durbin should pay Brown temporary total disability benefits of $806.67 per week for the period of September 27,2001, until October 10, 2002, and permanent, disability benefits at the rate of $209.85 per week for 450 weeks. Marshal Durbin appealed to the Wayne County Circuit Court, which affirmed the judgment of the Commission. This appeal followed.
¶ 2. Employing our limited standard of review, we áre unable to say that the Commission erred as a matter of law or acted in an arbitrary and capricious manner. Therefore, we affirm.'
*792 FACTS
¶ 3. On September 27, 2001, Brown received-injuries while working as a diesel mechanic for Marshal Durbin in Waynes-boro, Mississippi. Brown testified that he was lying on his side under a suspended eighteen-wheeler truck when the hook broke, causing the truck to fall and crush his pelvis. Brown suffered fractures to his hip, separation of his sacroilliac joint, and a urethral tear. Brown also claimed that as ,a result of his urethral tear, he suffered' stress incontinence and leakage, as well as pain in his hips and back. He also claimed that he has suffered from erectile dysfunction since the accident.
¶ 41 ’ After reaching maximum medical improvement, Brown returned to work' on October 10, 2002. Brown testified that he worked the night shift, from 4:00 p.m. until 11:00 p.m. Brown stated that his job responsibilities entailed performing brake jobs, occasionally working on transmissions, working On feed trucks, paperwork, cleaning the shop, and other mechanic duties. ’ Brown further stated that his employment duties required him to stand eight percént of the time and to walk about ten percent of the time. Brown’s responsibilities also required him to lift, carry, or push up to fifty pounds. Brown testified that he took the medication Lor-tab three times each day, as well as muscle relaxers. Brown also testified that he took two sleeping pills before going to sleep.
¶ 5. In January 2008, nearly six years after.his injury, Brown notified his supervisor that he intended to retire at the age of sixty-five. Brown turned sixty-five on September 26, 2008. Brown’s last day of work was October 11, 2008. On May 20, 2009, Brown filed a petition to controvert, alleging that he was permanently disabled due to his 2001 workplace injury. Brown alleged that he retired because the effects of his workplace injury no longer made it possible for him to perform his job duties.
¶ 6. In its answer to Brown’s petition, Marshal Durbin claimed that Brown’s decision to retire was voluntary, and at no point did Brown inform Marshal Durbin that his decision to retire was based upon the effects of his workplace injury. Marshal Durbin further contended that at no point during the six years that Brown worked after his injury did Brown ever, complain -of difficulty in performing his duties.
¶7. Prior to a June 2, 2010 hearing before the AJ, Brown submitted a'list of employers that he had contacted seeking available employment. At the hearing, the AJ heard testimony from Brown, David' Singley, Jimmy Singleton, Dr. Thomas Sturdavant, and Dr. David Collipp. The AJ also ■ examined Brown’s hospital records.
¶ 8. Brown testified that after his injuries and once he returned to work, he recéived a handicap sticker for his vehicle and began parking in a handicap parking space in the Marshal Durbin’s parking lot. Brown alleged that after “a while,” Marshal Durbin informed Brown that he would be terminated if he continued to park in the handicap parking space. Brown admitted that Marshal Durbin designated him a different handicap space to park his vehicle, which Brown estimated to be approximately 35 yards away from his work area. Brown testified that he failed to complain to Marshal Durbin about his pain because he feared termination. He testified that despite his medical restrictions due to his injury, his responsibilities at work remained unchanged following the accident. However, Brown admitted that as a result of his injury, Marshal Durbin no longer required him to climb on food trucks or push the transmissions of the trucks with his feet. Brown stated that *793 Marshal Durbin provided him with a wheel dolly to assist him with various physical aspects of his job, which Brown testified “made the work a whole lot easier.”
¶ 9. Singley, the Marshal Durbin’s shop supervisor, testified that Brown never complained to him of any pain. Singley also refuted Brown’s statement that Brown was threatened with termination if he was unable to complete a task. Singleton, Brown’s supervisor, also testified that Brown never complained of suffering from any pain.
¶ 10. Dr. Sturdavant, a physical-medicine, rehabilitation, and pain-management physician, testified by deposition. Dr. Sturdavant began treating Brown in October 2001, and he testified that if Brown’s wife had not been diligent in caring for Brown, then Brown would have required home health care. Dr. Sturdavant testified that Brown continued to show signs of osteoarthritis and chronic pain through the course of treatment. Dr. Sturdavant testified with a reasonable degree of medical probability that the arthritis was related to Brown’s injury. Dr. Sturdavant admitted on cross-examination that Brown’s physical medical impairment rating of 27% had npt been updated since Dr. Sturdavant assigned the rating on October 10, 2002,
¶ 11. Dr. Collipp, board certified in physical medicine and rehabilitation, also testified by deposition. Dr. Collipp performed an “Employer Medical Evaluation” on Brown on March 8, 2010. Dr. Collipp testified that his findings were consistent with Dr. Sturdavant’s findings. Dr. Col-lipp assigned Brown a 12% partial impairment medical rating and a 3% rating for his urethral injury, totaling. 15% whole body impairment. Dr. Collipp expressed that he found no medical reason for Brown to discontinue his employment.
¶ 12. After the hearing, the AJ found that “[although [Brown] left [Marshal Dur-bin] because of his increased pain, [he] did not tell anyone about the pain or why he was retiring. Additionally, he never felt an explanation was nécessary.” The AJ ultimately found that Brown’s condition gradually worsened until it manifested in permanent and total disability status. The AJ ordered that Brown should be paid for 450 weeks based on his average weekly wage of $629.51.
¶ 13. Marshal Durbin appealed to the Commission. On May 18, 2011, the Commission reversed the order of the AJ. The Commission agreed that based on the evidence presented, Brown’s retirement was due to the gradual and progressive worsening of his work-related injury, but found that the evidence failed to establish that Brown was unable .to return to any' gainful employment. After considering Brown’s “limitations, his age, education, past experience, the accommodations he required in his post-injury work for the Marshal Durbin, and his limited but unsuccessful efforts to find other work,” the Commission found that Brown had sustained a fifty percent loss of wage-earning capacity. The Commission ordered that Marshal Durbin should pay Brown temporary total disability benefits of $306.67 per week for the period of September 27, 2001, until October 10, 2002, and permanent disability benefits at the rate of $209.85 per week for 450 weeks.
¶ 14. Marshal Durbin appealed the Commission’s decision to the Wayne County Circuit Court, which affirmed the Commission’s decision. This appeal followed.
STANDARD OF REVIEW
¶ 15. This Court employs' a limited standard of review in a workers’ compensation appeal. We must determine only “whether the decision of the Commission is supported by substantial evidence.” *794 Casino Magic v. Nelson, 958 So.2d 224, 228 (¶ 18) (Miss.Ct.App.2007) (citing Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 447 (¶7) (Miss.Ct.App.1999)). We recognize that “the Commission, not the administrative judge, is the ultimate fact-fínder, and this Court will apply a general deferential standard of review to the Commission’s findings and decisions despite the actions of the administrative judge.” Smith v. Jackson Constr. Co., 607 So.2d 1119, 1123-24 (Miss.1992) (citations omitted). Because our review is limited,' this Court “will only reverse the Commission’s rulings where findings of fact are unsupported by substantial evidence, matters of law áre clearly erroneous, or the decision was arbitrary and capricious.” Casing Magic, 958 So.2d at 228 (¶ 13) (citing Westmoreland, 752 So.2d at 448 (¶ 8)). We maintain this deferential standard of review even if we would have been persuaded to rule otherwise if we had been the fact-finder. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994).
DISCUSSION
¶ 16. Marshal Durbin argues that the Commission’s determination that Brown suffered a fifty percent loss of wage-earning capacity was clearly erroneous and-wholly inconsistent With the Mississippi Workers’ Compensation Act. Marshal Dur-bin claims that insufficient evidence existed upon which to award Brown any benefits for ■ loss of wage-earning capacity. Marshal Durbin specifically asserts that Brown failed to meet his burden of proving that he was entitled to an award of permanent partial disability benefits due to lack of wage-earning capacity.
¶ 17. Mississippi Code Annotated section 71-3~3(i) (Rev.2011) defines disability as “incapacity because of injury to earn the wages -which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof, must be supported by medical findings.” “The concept of disability comprises a physical injury coupled with a loss of wage, earning capacity.” Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1218 (¶ 81) (Miss.Ct.App.2006) (citing I. Taitel & Son v. Twiner, 247 Miss. 785, 792, 157 So.2d 44, 46 (1963)). This Court has recognized that “workers’ compensation claimants have the burden of proving disability and the extent thereof.” Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1165 (¶ 21) (Miss.Ct.App.2010) (citation omitted). “The issue of whether , a claimant’s permanent disability is partial or total is a fact question to be determined from the evidence as a whole, including both medical and lay testimony.” Smith, 909 So.2d at 1222 (¶47) (citing McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss.1991)).
¶ 18. To meet the definition of disability, the claimant must be unable to acquire work in the same employment or similar jobs, and the claimant’s unemploya-bility must be'due to the injury in question. Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 828 (Miss.1991) (citing V. Dunn, Mississippi Workmen’s Compensation § 72.1 (3d ed.1982)). The claimant must prove that he has made a reasonable and diligent effort, although unsuccessful, to obtain some form of gainful employment. Lott v. Hudspeth Ctr., 26 So.3d 1044, 1049 (¶15) (Miss.2010); Pontotoc Wire Prods. Co. v. Ferguson, 384 So.2d 601, 603 (Miss.1980). “In determining the reasonableness of a claimant’s job search, the following factors are considered:' jbb availability, economics of the community, the claimant’s skills and background, and the nature of the disability.” Lott, 26 So.3d at 1049 (¶ 15) (citing Taplin, 586 So.2d at 828). A prima facie case of total disability may also *795 be established if the claimant, ate reaching maximum -medical improvement “reports back to the employer-for work and the employer refuses to reinstate or rehire” him. Lifestyle Furnishings v. Tollison, 985 So.2d 852, 859-60 (¶ 21) (Miss.Ct.App.2008).
¶ 19. Another consideration in determining whether a claimant possesses a disability is the claimant’s wage-earning capacity, Lott, 26 So.3d at 1049 (¶ 16). Factors to consider in determining loss of wage-earning capacity include “the amount of education and training that the claimant has had, [his] inability to. work, [his] failure to be hired elsewhere, the continuance of pain, and any other related circumstances.” Id. (quoting Alumax Extrusions, Inc. v. Wright, 737 So.2d 416, 422 (Miss.Ct.App.1998). Additionally, the claimant’s degree of disability is assessed “by cornparing the employee’s pre-injury wages with the employee’s post-injury capacity to earn wages in the open labor market.” Smith, 909 So.2d at 1218 (¶ 81) (citing Karr v. Armstrong Tire & Rubber Co., 216 Miss. 132, 137, 61 So.2d 789, 792 (1953)). If the claimant has made out a prima facie case showing disability, the burden then shifts to the employer to rebut or refute the claimant’s evidence. Lott, 26 So.3d at 1049 (¶ 15).
¶ 20. At the hearing before the AJ, Brown provided the deposition testimony of Dr. Sturdavant to bolster his claim of disability. The Commission’s order reflects that Dr. Sturdavant affirmed that Brown’s “physical abilities did not meet the demands of his occupation as an industrial mechanic.” The Commission also referenced a note from Dr. Sturda-vant written in 2008 advising that Brown may need to consider retiring because Dr. Sturdavant did not feel Brown could tolerate his job requirements any longer.
¶ 21. In response, Marshal Durbin asserts that it accommodated Brown’s restrictions -and allowed him to work at his own pace. Marshal- Durbin -states Brown never inquired whether Marshal Durbin had an available ¡alternative position. Marshal Durbin insists that Brown never complained or otherwise notified Marshal Durbin that he had encountered any difficulty in performing his duties. Marshal Durbin also states that Brown simply told his supervisor that he “retired,” and gave no explanation for this decision other than he had reached retirement age.,
¶22. However, Brown claims that he feared termination, and as a result, he failed to inform Marshal Durbin about his need to take pain medication, and never complained about suffering from any pain. Brown testified that Marshal - Durbin informed him that if he continued to park in the handicapped parking space at work, he would be terminated.
• ¶23. Marshal Durbin argues that it accommodated Brown’s work restrictions and physical limitations. In support of its argument, Marshal Durbin points to Brown’s testimony that when he lacked the ability to climb into the rear of trucks or press down on the clutches of trucks, Marshal Durbin no longer required him to do any of these activities; Marshal Durbin also provided Brown with a wheel dolly to assist him with various physical aspects of his job, which Brown testified “made the work a whole lot easier.”
¶24. Marshal Durbin further argues that Brown failed to conduct a reasonable job search, despite Brown’s testimony that beginning in December 2009, he applied for numerous jobs after his retirement, but received no offers of employment. Marshal Durbin asserts that Brown never presented to Marshal Durbin for rehire following his retirement. Marshal Durbin argues that this failure to allow it the opportunity to provide Brown an alternative position should weigh heavily against an award of benefits to Brown. Marshal *796 Durbin argues that the Commission failed to address the significance of Brown’s failure to present for rehire.
¶25. As previously acknowledged, the Commission found that after his injury, Brown continued to work with accommodations from the Marshal Durbin until October 11, 2008. In its order, the Commission stated:
Based on the evidence as a whole, the Commission finds that [Brown’s] retirement was due to the gradual and progressive- worsening of his condition which resulted from the work injury. However, the evidence as a whole does not establish that [Brown] is unable to return to gainful employment. [Brown’s] testimony regarding his post-injury job search efforts reveals that those efforts were primarily limited to other industrial mechanic positions for which [his] own physician has found him to be unsuited.
¶26. The Commission concluded that based on Brown’s “limitations, his age, education, past experience, the accommodations he required in his post-injury work for [Marshal Durbin], and his limited but unsuccessful .efforts to find other- work,” Brown sustained a fifty percent loss of wage-earning capacity. The Commission found that Brown was capable of performing some type of gainful employment, but that he was incapable of performing any industrial mechanic positions. The Commission’s findings inherently acknowledge Marshal Durbin’s argument as to Brown’s failure to request an alternative position with Marshal Durbin, and the Commission acknowledged that. Brown could perform alternative work.
¶27. After reviewing the record, we find substantial credible evidence supports the Commission’s finding that Brown had sustained a fifty percent loss of wage-earning capacity and the award of temporary total disability benefits of $306.67 per week for the period- of September 27, 2001, until October 10, 2002, and permanent disability benefits at the rate of $209.85 per week for 450 weeks. The record also reflects that Brown did present to Marshal Durbin for rehire after his initial .injury, but as stated, the Commission found that Brown’s post-injury condition gradually and progressively worsened, ultimately resulting in his retirement. The record reflects, and the Commission’s findings acknowledge, that Brown failed to seek alternative work positions from Marshal Durbin before retiring, even though he possessed the capacity to perform alternative duties. We thus affirm the circuit court’s judgment affirming the Commission’s order regarding Brown’s loss of wage earning capacity and award of compensation.
¶ 28. THE JUDGMENT OF THE WAYNE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, FAIR AND JAMES, JJ„ CONCUR. MAXWELL, J., NOT PARTICIPATING.

. We note that Marshal Durbin, Brown’s' employer, and Marshal Durbin Farms Inc,, the insurance carrier filed this appeal, For the purposes of this appeal, we will refer to both collectively as “Marshal Durbin,"