# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-01525-SCT

*MARTHA LOTT*

*v.*

*HUDSPETH CENTER AND MISSISSIPPI STATE*
*AGENCIES WORKERS' COMPENSATION TRUST*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2007 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM BENJAMIN RYAN |
| ATTORNEY FOR APPELLEE: | WILLIAM BIENVILLE SKIPPER |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE MONTGOMERY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 01/07/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     After a hearing before an administrative-law judge, Martha Lott was found permanently disabled in accordance with Mississippi Code Section 71-3-17(a) (Rev. 2000). The judge required her employer, Hudspeth Center ("Hudspeth"), to pay Lott total disability payments for a period of 450 weeks. Hudspeth and the Mississippi State Agencies Workers' Compensation Trust ("carrier") appealed to the Mississippi Workers' Compensation

Commission ("Commission"). The Commission issued its Order on June 29, 2006, reversing the administrative judge, and disallowing Lott from receiving 450 weeks of permanent, total disability benefits. The Commission determined that Lott had no additional loss of wage-earning capacity in excess of the maximum allowed for scheduled-member injuries pursuant to Mississippi Code Section 71-3-17(c) (Rev. 2000). Lott then appealed the decision of the Commission to the Montgomery County Circuit Court. On August 31, 2007, the Montgomery County Circuit Court affirmed the Commission's decision. Lott then appealed to the Mississippi Supreme Court, and the case was assigned to the Court of Appeals. The Court of Appeals reversed the ruling of the Commission and the circuit court, finding that Lott had made a prima facie showing of permanent total disability that Hudspeth had failed to rebut. As a result, the Court of Appeals awarded Lott compensation equal to sixty-six-and-two-thirds percent of her average weekly wage before her injury, for a period of 450 weeks. This matter is now before this Court on Hudspeth Center's and the carrier's petition for writ of certiorari.

**FACTS**

¶2. Martha Lott was an employee of the Kilmichael Group Home, which is operated by Hudspeth. Lott worked as a direct-care worker, and one of her duties was to assist mentally disabled adults and patients in wheelchairs with their everyday needs. On May 15, 2003, Lott sustained an injury to her right shoulder while lifting a patient from a wheelchair at the Kilmichael Group Home. Lott reported her injury to her employer and sought treatment from Dr. Asa Bennett, an orthopedic specialist. Dr. Bennett diagnosed a torn rotator cuff, and prescribed physical therapy. Because the therapy alone was not working, he subsequently

2

performed surgery to repair the injury on October 6, 2003. He also prescribed physical therapy for Lott after the surgery.

¶3.    Prior to her surgery, Lott was terminated from her job. The letter she received giving notice of her termination stated that she was being let go because of her probationary status, not because of her injury. The termination took effect on September 30, 2003. Lott began her job search approximately five months after her original injury in March 2004. Prior to and during her job search, Lott continued her treatment and reached maximum medical improvement on June 29, 2004, without any work restrictions, according to Dr. Bennett. However, Dr. Bennett did assess Lott's disability as a ten-percent impairment to her right upper extremity.

¶4.    After being discharged by Dr. Bennett, Lott retained an attorney and filed her petition to controvert on August 30, 2004. Lott claimed that she was entitled to permanent disability benefits in excess of the ten-percent anatomical disability rating assigned by Dr. Bennett. Lott was then referred by her attorney to Kay Cannon for a functional capacity evaluation (FCE). After the FCE, Cannon found that Lott could return to work at a sedentary light physical demand level. Cannon noted that Lott was limited by "very poor body mechanics" and was self-limited by her pain.

¶5.    Lott was then directed to Dr. David Collipp by the carrier for another evaluation. Dr. Collipp prescribed physical therapy and scheduled Lott for a second FCE to measure the success of physical therapy. After this FCE, Lott's only limitation, according to Dr. Collipp, was that she was unable to lift 100 pounds. Dr. Collipp found that Lott could return to work with a maximum lifting limit of sixty pounds.

3

¶6.    After her evaluation by Dr. Collipp, Lott began to seek other employment. She corresponded with Ann Allen, a vocational rehabilitation counselor with F.A. Richards and Associates, who advised Lott on a few occasions about jobs available in Lott's area. Lott sent resumes and/or completed job applications to nearly all of the employers suggested by Allen, but she received no offers. She did not send a resume for one job as a metal fabricator, because she did not know what the job entailed, and she had no experience in that field. Since working with Allen had produced no results, Lott initiated her own search for employment. The record contains evidence that Lott applied for or inquired about a total of 194 separate positions in her hometown, as in well as surrounding communities.

¶7.    A hearing finally was conducted before an administrative-law judge on July 6, 2005, concerning the petition filed by Lott on August 30, 2004. The hearing was to determine whether, and to what extent, Lott had any permanent disability, and what opportunities she had for future employment.  Lott's medical records were admitted into evidence, as were the reports of Cannon and Dr. Collipp.  David Stewart, a vocational expert testifying on behalf of Hudspeth and the carrier, stated that Lott was able to perform some work, but only sedentary to light work.  Stewart based his opinion on the first FCE, and he did not consider the FCE conducted by Dr. Collipp. Further, Stewart testified that his practice is to help clients find employment when requested to do so, but Lott never requested his services in finding employment. Stewart also testified that the unemployment rate in Montgomery County was higher than the state average, and that factor had limited Lott's employment opportunities as much as her injury had.

4

¶8. After hearing the testimony, the administrative-law judge found that Lott was permanently disabled in accordance with Mississippi Code Section 71-3-17(a) (Rev. 2000). The judge required that Lott receive permanent, total disability payments for a period of 450 weeks. Hudspeth and the carrier appealed the decision of the judge to the Commission. After oral arguments, the Commission reversed the administrative-law judge and found that Lott was entitled to only 200 weeks of permanent partial disability benefits, which is the maximum for her scheduled member injury. *See* Miss. Code Ann. § 71-3-17(c) (Rev. 2000).

¶9. Lott appealed the Commission's decision to the Circuit Court of Montgomery County. The circuit court reviewed the Commission's findings and deferred to its judgment as the finder of fact. The circuit court specifically noted that the Commission believed that Lott had retained significant functional abilities and thus retained some earning capacity. Since the Commission had reviewed the evidence, and it was unconvinced that Lott was permanently and totally disabled, and there was substantial evidence in the record to support that finding, the circuit court refused to overturn the holding of the Commission.

¶10. Lott then appealed that decision to this Court, and her appeal was assigned to the Mississippi Court of Appeals. The Court of Appeals reversed the decision of the Circuit Court of Montgomery County, finding that Lott had made a prima facie showing of permanent, total disability, which Hudspeth had failed to rebut. The Court of Appeals awarded Lott compensation equal to sixty-six-and-two-thirds percent of her average weekly wage before her injury for a period of 450 weeks. This matter is now before this Court on writ of certiorari.

## LEGAL ANALYSIS

**Whether the circuit court erred in affirming the Commission's decision that Martha Lott was entitled only to benefits equivalent to ten percent loss of her arm, as opposed to permanent total disability benefits.**

¶11. Lott asserts that the Commission erred when it held that Lott was not permanently and totally disabled. This Court agrees with the decision of the Montgomery County Circuit Court affirming the judgment of the Commission, and we therefore reverse the decision of the Court of Appeals and affirm that of the circuit court.

¶12. The standard of review in a workers' compensation appeal is limited to whether the Commission's decision is supported by substantial evidence. ***Walker Mfg. Co. v. Cantrell***, 577 So. 2d 1243, 1245-47 (Miss. 1991). "The Workers' Compensation Commission is the trier and finder of facts in a compensation claim, the findings of the Administrative Law Judge to the contrary notwithstanding." ***Smith v. Container Gen. Corp.***, 559 So. 2d 1019, 1021 (Miss. 1990). This Court will reverse an order of the Workers' Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence. ***Vance v. Twin River Homes, Inc.***, 641 So. 2d 1176, 1180 (Miss. 1994).

¶13. In order to receive compensation at all, Lott must show that she has a disability as defined by the Mississippi Workers' Compensation Act. *See* Miss. Code Ann. §71-3-3(i) (Rev. 2000). To show that a disability exists, the claimant has the burden of proof to make out a prima facie case of such disability. ***Georgia Pacific Corp. v. Taplin***, 586 So. 2d 823 (Miss. 1991). The trier of fact must determine whether the claimant has made out a prima facie case based on the evidence presented. ***Thompson v. Wells-Lamont Corp.***, 362 So. 2d

638, 641 (Miss. 1978). Again, "a Commission['s] determination of disability constitutes a finding of fact." *Georgia Pacific Corp. v. Taplin*, 586 So. 2d 823, 828 (Miss. 1991).

¶14.    The Mississippi Workers' Compensation Act defines disability as "incapacity *because of injury* to earn the same wages which the employee was receiving at the time of the injury in the same or other employment . . . . " Miss. Code Ann. § 71-3-3(i) (Rev. 2000) (emphasis added)[1]. In order to determine that an employee is disabled, there must be a finding that "the claimant could not obtain work in similar or other jobs *and* that the claimant's unemployability was due to the injury in question." *Taplin*, 586 So. 2d at 828 (emphasis added).

¶15.    After a claimant has made out a prima facie case, the burden then shifts to the employer to rebut or refute the claimant's evidence. *Thompson*, 326 So. 2d at 641. In proving total disability, the claimant must prove that she has made a diligent, yet unsuccessful, effort to garner some form of gainful employment. *Adolphe Lafont USA, Inc. v. Ayers*, 958 So. 2d 833, 839 (Miss. Ct. App. 2007) (citing *McCray v. Key Constructors, Inc.*, 803 So. 2d 1199, 1203 (¶ 17) (Miss. Ct. App. 2000). In determining the reasonableness of a claimant's job search, the following factors are considered: job availability, economics

---

[1] The dissent seeks to distinguish the cases and statutes cited in this opinion by arguing that it is not a requirement that the injury be the reason that a claimant cannot find employment. However, the statute is abundantly clear. The statute requires that a disability must first be shown before anything else. To prove there is a disability, there must be "incapacity because of injury." Miss. Code Ann. § 71-3-3 (Rev. 2000). The dissent simply wishes to skip over the statutory guidelines requiring a finding of disability and leap to the loss of wage-earning capacity and whether the job search was reasonable. This is an incorrect view. One first must find that the claimant has a disability as defined by statute before analyzing the loss of wage-earning capacity. The dissent is attempting to put the cart before the horse. The dissent also wishes to treat this as an unemployment case rather than what it is, which is a worker's compensation case. This is not what the Legislature intended when it enacted the Worker's Compensation Act.

of the community, the claimant's skills and background, and the nature of the disability. *Taplin*, 586 So. 2d at 828.

¶16. Another consideration in determining whether a claimant has a disability is her wage-earning capacity. Several factors must be considered in determining loss of wage-earning capacity, including "the amount of education and training that the claimant has had, [her] inability to work, [her] failure to be hired elsewhere, the continuance of pain, and any other related circumstances." *Alumax Extrusions, Inc. v. Wright*, 737 So. 2d 416, 422 (Miss. 1998) (citing *McGowan v. Orleans Furniture, Inc.*, 586 So. 2d 163, 167 (Miss. 1991).

¶17. In this case, the Court of Appeals held that the Commission had erred as a matter of law by not employing the proper legal standard because it "made no findings regarding whether Lott had made a prima facie case of total disability and whether her employer had met its burden in showing her efforts were unreasonable." *Lott. v. Hudspeth Center*, ___ So. 2d ____, 2008 WL 4405176, 4 (Miss. Ct. App. 2008). This Court does not agree. The Commission did find that Lott had failed to prove a loss of wage-earning capacity. The Commission noted that because of this failure, Lott did not meet her burden of showing a prima facie case of total disability.

¶18. The dissent from the Court of Appeals was correct and followed the standard by which we must review decisions of the Commission. There is little or no doubt that Lott suffered an injury. However, that injury must rise to the level of a disability before it is compensable. Substantial evidence supports a finding that Lott did not have a permanent, total disability. Thus, we cannot overturn the holding of the Commission where it is "unable

8

to conclude that Mrs. Lott is permanently and totally disabled as the result of the injury to her right arm."

¶19.    Lott claims that the Commission was incorrect, and her job search was diligent, which entitles to her permanent, total disability benefits. It is true that a claimant may establish a prima facie case by showing that, despite a reasonable job search, she is unable to find the same or similar employment. ***Pontotoc Wire Prods. Co. v. Ferguson***, 384 So. 2d 601, 603 (Miss. 1980) (citation omitted).  However, this Court has held that "[a] conclusion that the employee is disabled rests on a finding that the claimant could not obtain work in similar or other jobs *and that the claimant's unemployability was due to the injury in question.*" ***Taplin***, 586 So. 2d at 828 (emphasis added).

¶20.    The record shows that Lott applied for or inquired about 194 separate positions. However, there is substantial evidence that the lack of employment was not due to her injury. Dr. Bennett released Lott without *any* work restrictions.  The only restriction imposed came from Dr. Collip. He found that Lott could no longer lift 100 pounds, so she was restricted to a sixty-pound maximum. Nonetheless, Lott also was restricted by other factors that had nothing to do with her injury.

¶21.    In this case, Lott was terminated from her position with the Kilmichael Group Home shortly after her accident. Her termination notice stated that she was being terminated due to her probationary status rather than as a consequence of her injury. After recovering from her surgery, Lott never reapplied or sought information from Kilmichael Group regarding employment. Lott claims that no one from the Kilmichael Group ever contacted her after her

injury to discuss reinstating her employment. However, it was not the responsibility of the Kilmichael Group to make contact with Lott regarding potential employment.

¶22. The Commission concluded that Lott was unable to find employment due "to the depressed economic conditions in the area where she lives, and not to the injury itself." As Judge Griffis correctly found, "this conclusion was based on substantial evidence presented by Lott's expert who testified that the unemployment rate in Lott's county of residence was higher than the state average and that Lott's inability to find work was limited as much by the local economy as by her injury." *Lott*, ___ So. 2d ___, 2008 WL 4405176, 6 (Griffis, J., dissenting).

¶23. This Court is not vested with fact-finding responsibility on appeal. Instead, whether the claimant has made out a prima facie case is a question to be decided by the trier of fact on the evidence presented. *Thompson,* 362 So. 2d at 641. Therefore, whether Lott put forth a prima facie showing of permanent total disability was an issue to be determined exclusively by the Commission. Here, the Commission conducted a hearing and clearly held that, based on the entirety of the evidence, it was "unable to conclude that Ms. Lott is permanently and totally disabled as the result of the injury to her right arm."

¶24. After reviewing the record, we cannot say that the Commission's decision was against the overwhelming weight of the evidence, or that the decision was not supported by substantial evidence. Therefore, we reverse the holding of the Court of Appeals and affirm the decision of the Montgomery County Circuit Court.

10

¶25. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE MONTGOMERY COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., CARLSON, P.J, RANDOLPH AND LAMAR, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J. DICKINSON AND CHANDLER, JJ., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶26. The Commission's application of the law requires a finding that Ms. Lott be "totally unable to earn wages" before she is entitled to permanent total disability benefits; however, such a legal standard is not to be found in Mississippi's Workers' Compensation Law or in this Court's precedent. Accordingly, I respectfully dissent from the majority opinion, which adopts this erroneous legal standard.

¶27. The Commission found that Ms. Lott suffers from a one-hundred-percent loss of use of her right arm, and that she is entitled to scheduled-member benefits under Mississippi Code Section 71-3-17(c)(1). Thus, Ms. Lott is disabled under Mississippi Workers' Compensation Law and, by all accounts, is receiving her weekly statutory benefits. However, Mississippi Workers' Compensation Law provides that persons with scheduled-member injuries may seek and receive permanent total benefits. ***Smith v. Jackson Constr. Co.***, 607 So. 2d 1119, 1128 (Miss. 1992). In ***Smith***, this Court held that

> [w]here an employee suffers an injury covered by the schedule in Section 71-3-17(c) and where the injury results in a permanent loss of wage-earning capacity within Section 71-3-17(a), the latter section controls exclusively and the employee is not limited to the number of weeks of compensation prescribed in Section 71-3-17(c)'s schedule.

11

*Id.* at 1128. "If a claimant is unable to earn wages despite only a loss or loss of use of a scheduled member, then the claimant is permanently and totally disabled." *Id.* *See also Meridian Prof'l Baseball Club v. Jenson*, 828 So. 2d 740 (Miss. 2002).

¶28.   Therefore, the operative issue is not whether Ms. Lott is "totally unable to earn wages;" it is whether she has suffered a loss of wage-earning capacity within the meaning of Section 71-3-17(a).[2]

¶29.   In the determination of whether one has suffered a loss of wage-earning capacity, if a claimant establishes that he or she has made a "reasonable effort" to find "the same or other employment," and the employer or insurance carrier fails to "introduce evidence of local accessible employment opportunities," the claimant has established a loss of wage-earning capacity. Miss. Code. Ann. § 71-3-3(I) (Rev. 2000); *Pontotoc Wire Prods. Co. v. Ferguson*, 384 So. 2d 601 (Miss. 1980); *Piper Indus., Inc. v. Herod*, 560 So. 2d 732, 735 (Miss. 1990); *Georgia Pacific Corp. v. Taplin*, 586 So. 2d 823 (Miss. 1991).

¶30.   In *Herod*, a claimant was injured by sulfur dioxide, which had leaked from a tank he had been repairing. *Herod*, 560 So. 2d at 733. After the injury, the claimant was able to find other employment; however, his income was less than it had been at the job he had held at the time of injury. *Id*. In an effort to establish a loss of wage-earning capacity, the claimant

---

[2]Mississippi Code Section 71-3-17(a) governs permanent total disability and provides that if the facts of a given claim amount to a permanent total disability, the claimant is entitled to "sixty-six and two-thirds percent (66-2/3%) of the average weekly wages of the injured employee . . . not to exceed four hundred fifty (450) weeks or an amount greater than the multiple of four hundred fifty (450) weeks times sixty-six and two-thirds percent (66-2/3%) of the average weekly wage for the state." Miss. Code Ann. § 71-3-17(a) (Rev. 2000).

testified that he had sought employment from two prospective employers in the Tupelo area, and that he did not seek employment in New Albany, because the furniture business there had been "hit hard." *Id*. The Commission considered these efforts reasonable, and this Court affirmed, noting that, because the employer had failed to "introduce evidence of local accessible employment opportunities," the claimant had established a loss of wage-earning capacity, and, therefore, was entitled to permanent partial benefits. *Id.*

¶31.   In *Ferguson*, 384 So. 2d at 602, the employer appealed the Commission's finding that the claimant had suffered a loss of wage-earning capacity.  The evidence presented to the Commission established that the claimant was entirely capable of maintaining an office job, but that he was unable to find employment after a reasonable effort, which entailed applying for one position and inquiring about one other position. *Id.* at 603-04. On appeal, this Court noted that "[i]f a claimant makes a prima facie showing of reasonable efforts indicating there are not suitable jobs, the burden then shifts to the employer or insurer to show otherwise." *Id.* at 603 (citing *Thompson v. Wells-Lamont Corp*., 361 So. 2d 638 (Miss. 1978)).  The Court went on to say that the "employer could readily have rebutted the prima facie case with evidence from such sources as employment agencies clearly showing the local accessibility of substantial gainful employment suited to [the claimant's] unfortunate medical condition, had such evidence been available. But because the employer failed to present such evidence, we can only conclude none was available." *Id*. at 604.

¶32.   Similarly, in *Taplin*, 586 So. 2d at 825, a claimant who was fifteen percent permanently disabled undertook to prove that he had suffered a loss in wage-earning capacity

by showing that he had inquired about eight jobs, but to no avail. On appeal, this Court noted that the applicable rule of law is that, "[o]nce the claimant has made out a prima facie case, the employer assumes the burden to prove otherwise by showing that the claimant's efforts constituted mere sham or unreasonable effort." *Id.* at 828. Ultimately, the employer failed to present any evidence of employment opportunities in the area, and this Court affirmed the Commission's finding of loss of wage-earning capacity. *Id*. at 829.

¶33. Thus, the controlling rule of law is clear: If a claimant makes a prima facie showing that reasonable but unsuccessful efforts were made to obtain like or similar employment, the claimant is entitled to permanent total disability benefits, unless the employer or carrier proves that the efforts of the claimant were either unreasonable or a sham. *Ferguson*, 384 So. 2d at 603; *Herod*, 560 So. 2d at 733; *Taplin*, 586 So. 2d at 828. This rule is in accord with the Workers' Compensation Law's definition of disability, which is an "incapacity because of [an] injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings." Miss. Code Ann. § 71-3-3(I) (Rev. 2000). Thus, if a claimant's injury is supported by a medical finding, and the claimant is unable to earn the wages that she was earning at the time of injury, the Commission may deny benefits to the claimant only if it determines, from a preponderance of the evidence, that the claimant's efforts to find gainful employment were "unreasonable." *Ferguson*, 384 So. 2d at 603; *Herod*, 560 So. 2d at 733; *Taplin*, 586 So. 2d at 828; *see also* Vardaman S. Dunn, *Mississippi Workmen's Compensation* § 72.1 (1990) (noting that "[i]t is enough to sustain

an award that the claimant is unable to find other employment after making a 'reasonable effort' to do so.").

¶34.   For Ms. Lott to be awarded permanent total disability benefits, the Commission did not have to find that she had suffered a total inability to earn wages as a result of her injury. It was required only to determine whether Ms. Lott had made a reasonable effort to secure like or similar employment. *See, e.g., Smith v. Jackson Constr. Co.*, 607 So. 2d 1119, 1128 (Miss. 1992); *Ferguson*, 384 So. 2d at 603; *Herod*, 560 So. 2d at 733; *Taplin*, 586 So. 2d at 828.  The Commission made no such finding.

¶35.   Moreover, both the Commission and the majority rely on *Taplin* to support the proposition that the Commission may consider "job availability, economics of the community, the claimant's skills and background, and the nature of the disability," when determining whether a person has suffered a loss of wage-earning capacity. Maj. Op. at ¶ 15. However, a diligent reading of *Taplin*, *Ferguson*, and *Herod* establishes that when a job pool is limited, or when the education level or skill level of a claimant is limited, these factors are to be weighed *in favor* of the claimant, *not against* him. *Taplin*, 586 So. 2d at 828; *Ferguson*, 384 So. 2d at 603; *Herod*, 560 So. 2d at 733 (emphasis added).  The reasoning in the majority opinion is that if there are no jobs to be had by the claimant, there will be no workers' compensation benefits; however, this goes against the foundation upon which Mississippi's workers' compensation law was established.  This Court has been guided historically  "by the beneficent purposes of the Act which mandate that doubtful claims . . . be resolved in favor of payment of compensation. *Hale v. Ruleville Health Care Center*,

687 So. 2d 1221, 1226 (Miss. 1997) (citing *Delta Drilling Co. v. Cannette*, 489 So. 2d 1378 (Miss. 1986)). "Workmen's Compensation Law should be construed generously to advance its underlying remedial aims." *Ferguson*, 384 So. 2d at 603 (citing *Speed Mech., Inc. v. Taylor*, 342 So. 2d 317, 319 (Miss. 1977)).

¶36.  Here, it is undisputed that Ms. Lott suffers from a one-hundred-percent loss of use of her right arm, and that she sought employment from 194 entities.  That is twenty-five times the number of jobs sought in *Taplin*, ninety-seven times the number of jobs sought in *Ferguson* and ninety-seven times the number of jobs sought in *Herod*.  *Taplin*, 586 So. 2d at 825; *Ferguson*, 384 So. 2d at 602; *Herod*, 560 So. 2d at 733.  This claimant did not confine her search to the same kind of employment in which she had been engaged in at the time of injury, nor did she confine her search to her geographic vicinity.  Because neither the employer nor the carrier presented evidence to refute the reasonableness of Ms. Lott's efforts, she is entitled to permanent total disability benefits.

¶37.  Accordingly, I would grant Ms. Lott her entitlement under Mississippi's Worker's Compensation Law to permanent total disability benefits.

**GRAVES, P.J., JOINS THIS OPINION**.