IRVING, P.J.,
for the Court:
¶ 1. On January 4, 2007, Martha Kay Stanford filed a petition to controvert with the Mississippi Workers’ Compensation Commission (Commission), alleging that she had sustained injuries to her head, neck, back, knees, and extremities when she tripped and fell during the course and scope of her employment with V.F. Jean-swear, LP (V.F.). A hearing was held before an administrative judge (AJ), who denied Stanford’s claim for workers’ compensation benefits. Stanford appealed the AJ’s decision to the Commission, which affirmed the AJ’s decision. Stanford appealed the Commission’s decision to the Circuit Court of Union County, and the *827 circuit court affirmed the Commission’s decision denying benefits.
¶ 2. Feeling aggrieved, Stanford appeals and asserts three issues on appeal, which we will consolidate into two issues: (1) whether the AJ showed bias in favor of the employer/carrier and (2) whether the Commission’s denial of disability benefits was arbitrary and capricious and not supported by substantial evidence.
¶ 3. Finding no error, we affirm.
FACTS
¶ 4. Stanford sustained her injuries while driving a truck for V.F. She testified that sometime during the late evening of February 7, 2006, or early morning of February 8, she began to feel nauseous, so she pulled the truck into a scale house to rest for the evening. She parked the truck, and as she attempted to exit the driver’s seat and enter the sleeper compartment, she tripped over a cooler. Stanford fell into the sleeper compartment and hit her head on the bed rail; the fall knocked her unconscious. Stanford’s husband, William Stanford, who was riding with her, attempted to revive her. Stanford testified that after she regained consciousness, William offered to take her to the emergency room. Stanford declined and decided to stay in the sleeper compartment and rest until morning. According to Stanford, she contacted Tom Swin-ton, the head dispatcher, the following day to report her fall. Stanford testified that Swinton instructed her to call Keith Horton, the terminal manager, and report her fall. Stanford testified that she contacted Horton, and he arranged for Stanford and her husband to return home.
¶ 5. Stanford and her husband returned home on February 8, 2006, and she went to Dr. Allie Prater for an evaluation of her injuries. Dr. Prater was unable to see Stanford that day, so she returned to his office the following day. Dr. Prater’s notes reflect that Stanford’s chief complaints were blackouts, syncope, and slurred speech. Stanford told Dr. Prater that her symptoms had begun one week prior to her visit. Dr. Prater’s notes do not mention Stanford’s fall in the truck or that she was knocked unconscious; however, Stanford testified that she had told Dr. Prater about the fall. Dr. Prater diagnosed Stanford with benign essential hypertension and ordered blood tests, an ultrasound, and a brain MRI.
¶ 6. Stanford returned to Dr. Prater on March 81, 2006, complaining of neck pain. Dr. Prater reviewed Stanford’s MRI, which revealed osteophytes at C3-4, C5-6, and C6-7. Dr. Prater diagnosed Stanford with “unspecified polyarthropathy or po-lyarthritis involving multiple sites” and referred her to Dr. Glenn Crosby, a neurosurgeon.
¶ 7. Before seeing Dr. Crosby, Stanford presented to Dr. Johnny Mitias, an orthopedic surgeon, on March 15, 2006. Dr. Mitias’s notes indicate that Stanford complained of “right buttock and lateral thigh pain” and that the pain had existed for “some time” but had worsened over the last two to three months. While Dr. Miti-as’s records state that Stanford is a truck driver, there is no mention of her fall. In fact, Dr. Mitias noted that “[tjhere was no injury that started this.” Dr. Mitias diagnosed Stanford with right sciatica and ordered physical therapy.
¶ 8. Dr. Crosby evaluated Stanford on March 31, 2006. Stanford again complained of neck pain, which Dr. Crosby described in his notes as “insidious onset.” Dr. Crosby diagnosed Stanford with symptomatic cervical spondylosis with osteo-phyte complex and ordered physical therapy. The physical therapy aggravated Stanford’s symptoms, so Dr. Crosby rec *828 ommended a cervical diskectomy and fusion at C3-4. Dr. Crosby performed the recommended surgeries on August 8, 2006. After surgery, Stanford began complaining of pain in her left buttock and down her left leg. Dr. Crosby ordered a lumbar MRI, which revealed a large rupture of the lumbar spine at L4. On November 28, 2006, Dr. Crosby performed a diskectomy at the L4 level.
¶ 9. Stanford returned to Dr. Crosby on January 25, 2008, again complaining of neck and lower back pain. Dr. Crosby’s notes mention that Stanford attributed her symptoms to her work as a truck driver. Additionally, Dr. Crosby’s notes indicate that Stanford “had a fall this past year” that may have aggravated her back. However, Dr. Crosby’s notes do not mention that Stanford suffered a fall at work until her follow-up visit with Dr. Crosby on May 30, 2008. Dr. Crosby testified in his deposition that prior to that visit, Stanford had not disclosed any history of an accident at work. However, he testified that the problems with her neck and back were probably related to her work injury.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 11. An appellate court’s standard of review in workers’ compensation cases “is limited to whether the [Commission’s] decision is supported by substantial evidence.” Omnova Solutions, Inc. v. Lipa, 44 So.3d 935, 940 (¶ 15) (Miss.2010) (quoting Lott v. Hudspeth Ctr., 26 So.3d 1044, 1048 (¶ 12) (Miss.2010)). “The [Commission] is the trier and finder of facts in a compensation claim, the findings of the [AJ] to the contrary notwithstanding.” Id. (quoting Lott, 26 So.3d at 1048). An appellate court “will reverse an order of the [Commission] only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence.” Id. (quoting Lott, 26 So.3d at 1048). Furthermore, “[i]n applying this standard, ... the Mississippi Workers’ Compensation Law ⅛ construed liberally, and doubtful cases are to be resolved in favor of compensation so that the beneficent purposes of the act may be achieved.’ ” Id. (quoting Robinson v. Packard Elec. Div., 523 So.2d 329, 332 (Miss.1988)).

1. Bias of the AJ

¶ 12. The Mississippi Supreme Court has stated that, in the context of administrative hearings, “there is a presumption that the officers conducting the hearing ... behave honestly and fairly in the conduct of the hearings and in the decision-making process.” McFadden v. Miss. State Bd. of Med. Licensure, 735 So.2d 145, 158 (¶ 53) (Miss.1999) (quoting United Cement Co. v. Safe Air for the Env’t, Inc., 558 So.2d 840, 842 (Miss.1990)). “Absent some showing of personal or financial interest on the part of the hearing officer or evidence of misconduct on the officer’s part, this presumption is not overcome.” Id. (quoting United Cement, 558 So.2d at 842-43).
¶ 13. Stanford argues that the AJ demonstrated bias in favor of V.F. and its insurance carrier by affording greater weight to certain witnesses and evidence. Specifically, she contends that the AJ should not have accepted the testimony of Sally Jo Rupley, who was also employed by V.F. Rupley testified that she had gone on a cruise with Stanford in April 2006. Rupley stated that, during the cruise, she did not observe Stanford having trouble with her back, neck, or any other parts of her body. In fact, Rupley testified that she witnessed Stanford go horseback riding during the cruise.
*829 ¶ 14. Stanford argues that Rupley’s testimony was biased given that she was an employee of V.F. and that the AJ erred in accepting her testimony. Rupley admitted that her supervisor had requested that she appear at the hearing to testify; however, Rupley denied that anyone at V.F. had threatened or coerced her in exchange for her testimony. We fail to see how allowing Rupley to testify demonstrates bias on the part of the AJ, especially where the AJ also permitted the testimonies of Stanford’s husband, relatives, and friends.
¶ 15. Additionally, Stanford contends that the AJ placed undue emphasis on the fact that Stanford went on a cruise two months after her alleged work-related injury. V.F. introduced a video taken during the cruise into evidence that depicted Stanford riding a horse and judging a “hairy chest” contest. Again, we fail to find bias on the AJ’s part, especially where the video was just one piece of evidence considered by the AJ in rendering her decision.
¶ 16. Finally, Stanford argues that the AJ unfairly favored the medical records of Dr. Mitias, who saw Stanford only one time. The record completely belies this contention. In addition to a discussion of Dr. Mitias’s records, the AJ’s order contains a discussion of Dr. Prater’s and Dr. Crosby’s records. Both doctors served as Stanford’s treating physicians and saw Stanford on numerous occasions. Dr. Prater’s medical records contain no mention of a work-related injury, and Dr. Crosby’s records contain no mention of Stanford’s alleged injury until May 30, 2008. Based on the record, we see no evidence that the AJ unfairly favored Dr. Mitias’s records, especially where the AJ also discussed the medical records of Dr. Prater and Dr. Crosby in her order.
¶ 17. Based on our review of the record, we see no evidence of bias on the part of the AJ in rendering her decision to deny benefits. This issue is without merit.

2. Commission’s Decision

¶ 18. Stanford also argues that the Commission’s decision to deny benefits is not supported by substantial evidence and, consequently, is arbitrary and capricious. As noted above the Commission is “the ultimate fact-finder.” Adolphe Lafont USA, Inc. v. Ayers, 958 So.2d 833, 839 (¶ 16) (Miss.Ct.App.2007). Furthermore, this Court must defer to the Commission’s finding regarding witness credibility. Id.
¶ 19. In this case, the AJ determined that Stanford had not sufficiently proven that she had suffered a work-related injury, and the Commission agreed. In making her determination, the AJ considered the fact that Stanford’s medical providers made no mention of a work-related injury in their records until over two years after the alleged injury. Additionally, the AJ noted that while Stanford testified that she had informed Horton, Swinton, and Rupley of her injury, all three witnesses denied that they had ever been told about her fall. Furthermore, the AJ stated that Stanford’s testimony regarding her disability was contradicted by the video from her cruise, which depicted Stanford as “physically active and robust.”
¶ 20. This Court has previously upheld the Commission’s decision to deny benefits where the employer testified that it had never received notice of an injury and the claimant initially failed to inform his medical providers of his work-related injury. Odom v. FedEx Ground Sys., Inc., 22 So.3d 362, 365 (¶ 14) (Miss.Ct.App.2009). In Odom, Joshua Odom claimed that he had sustained a back injury while at work. Id. at 363 (¶ 2). Odom did not immediately inform his treating physicians that his injury was work related. Id. at (¶¶ 3-4). *830 Eventually, Odom informed Dr. Michael Molleston, who performed his back surgery, that he had suffered a lifting injury at work. Id. at (¶4). Dr. Molleston opined in his deposition that Odom’s injuries were work related. Id. at (¶ 5). Odom’s manager testified in her deposition that she had never received notice of an injury and that Odom’s supervisor did not file an accident report despite a FedEx policy which required that an accident report be filed. Id. at (¶ 6).
¶21. In upholding the Commission’s decision to deny benefits, this Court noted that Odom’s “medical records were contradictory regarding whether the injury even occurred at work.” Id. at 366 (¶ 16). This Court further noted that “[w]hen a patient gives a history to a physician which is inconsistent with allegations in a workers’ compensation case, this is a significant factor in support of denial of a claim.” Id. (quoting Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (¶ 16) (Miss.2003)).
¶22. In the present case, Stanford’s medical records do not contain any mention of a fall in her truck until May 30, 2008 — over two years after the injury allegedly occurred. Stanford’s medical records prior to May 30, 2008, either contain no mention of a work-related injury or expressly deny that her symptoms were caused by an injury. Furthermore, Stanford’s employer, like the employer in Odom, denied receiving notice of any work-related injury. Based on the inconsistencies and contradictions in the evidence, we cannot say that the Commission erred in finding that Stanford had failed to prove by a preponderance of the evidence that she had sustained a compensable work-related injury. This issue is without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF UNION COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ„ CONCUR.