COLEMAN, Justice,
dissenting:
¶ 17. Based on the evidence and testimony presented, it is my opinion that the Commission’s decision was supported by substantial evidence; therefore, I respectfully dissent.
*905 ¶ 18. Under the Mississippi Workers’ Compensation Act, an employee may be entitled to compensation for disability from an injury “arising out of and in the course of employment.” Miss.Code Ann. § 71-3-7(1) (Supp.2013). However, “[n]o compensation shall be payable ... if it was the willful intention of the employee to injure or kill himself or another.” Miss.Code Ann. § 71-3-7(4) (Supp.2013). In the instant case, Smith was injured on the job while working for Tippah Electric Power Association, and he filed a petition to controvert with the Mississippi Workers’ Compensation Commission. Tippah responded that Smith was not entitled to compensation, claiming he had injured himself intentionally in an attempt to commit suicide. The administrative judge found sufficient evidence to support Tip-pah’s position and held that Smith’s injuries were not compensable. The Commission affirmed, as did the Court of Appeals.
¶ 19. The majority correctly cited the standard of review for appeals from the Workers’ Compensation Commission but, because the instant case turns on whether the Commission’s decision was supported by substantial evidence, it is worth repeating the standard.
The standard of review in a workers’ compensation appeal is limited to whether the Commission’s decision is supported by substantial evidence. Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1245-47 (Miss.1991). “The Workers’ Compensation Commission is the trier and finder of facts in a compensation claim, the findings of the Administrative Law Judge to the contrary notwithstanding.” Smith v. Container Gen. Corp., 559 So.2d 1019, 1021 (Miss.1990). This Court will reverse an order of the Workers’ Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994).
Lott v. Hudspeth Ctr., 26 So.3d 1044, 1048 (¶ 12) (Miss.2010). The Court has provided the following definition of substantial evidence:
Substantial evidence, though not easily defined, means something more than a mere scintilla of evidence, [and] it does not rise to the level of a preponderance of the evidence. It may be said that it means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.
Miss. Dep’t of Human Servs. v. McNeel, 869 So.2d 1013, 1018 (¶ 19) (Miss.2004) (quoting Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991) (internal citations omitted)). Because no one witnessed the incident, the majority maintains that “there was no direct evidence” of how Smith came in contact with the lines and concludes that the Commission’s decision was “based on assumptions and speculation regarding how the accident occurred.” (Maj.Op.13-14.) It is undisputed that no one saw Smith in the seconds preceding the accident, and no one could testify as to how Smith came in contact with both the primary and neutral lines, which are several feet apart. However, based on the testimony and evidence" presented, it is my opinion that there is substantial evidence in the record from which it could be “reasonably inferred” that Smith intentionally grabbed the lines.[8]
¶ 20. Smith had worked for Tippah for approximately sixteen years at the time of the accident. He had been trained on the *906 job, he had attended lineman training classes, and he attended safety classes every other month. Smith considered himself to be an experienced lineman, and he was considered by his coworkers and employers to be a good lineman. Smith testified that “he knew what would result if one were to touch a hot phase and a neutral phase at the same time.” Although Smith claims that he did not touch the neutral line, the evidence indicates that he unquestionably did. Several witnesses testified that they saw Smith with one hand on the neutral line and one hand on the primary line immediately after the accident. The palms of Smith’s gloves were burned, indicating that he was holding both lines, contrary to Smith’s testimony that he raised up and bumped into the line. Smith was wearing leather gloves, but he admitted he should have been wearing rubber gloves, which is required when coming within two feet and one inch of the primary line.
¶ 21. The distance between the primary line and neutral line was approximately three feet and seven inches, making it unlikely that Smith would be accidentally in contact with both lines simultaneously. Michael Glen Weltzheimer, assistant to the vice president of safety and loss control for the Electric Power Association of Mississippi, investigated the scene and took the measurements after the incident. He testified at the hearing. The administrative judge wrote:
[Weltzheimer] also took measurements at the scene. This was to see if the line met code which he opined that it did. He said that the distance between the primary and the neutral at the sag was 3 feet 7 inches. He said a perfect sag would be 4 feet. Closer to the pole the distance between the line was 3 feet 9 inches, closer to 4 feet. He testified that he had not heard of other situations where someone had come in contact with both wires with [his] hands or arms. He has heard of instances where one body part came in contact with one and some piece of equipment came in contact with the other.
See Smith, 138 So.3d at 940.
¶ 22. Finally, Smith was under investigation for murder, and law enforcement officials had obtained a DNA sample from him days prior to the incident. Several coworkers testified that Smith’s demeanor was different on the day of the incident, and he was not joking around as he usually did. Another said there had been tension among the crew for the past two weeks. Danny Capíes arrived at the site to take Smith in for a drug test, because his employer suspected Smith was using drugs. The fact that Smith’s employer, who had known him for sixteen years, was suspicious that he had been using drugs is further indication that Smith had been acting differently.
¶ 23. Certainly, it would be preferable to have more eyewitness testimony, but I cannot say that the Commission’s decision was “clearly erroneous and contrary to the overwhelming weight of the evidence.” See Lott, 26 So.3d at 1048 (¶ 12) (quoting Vance, 641 So.2d at 1180). In my opinion, the evidence presented in support of Tip-pah’s position that Smith intentionally grabbed the lines is certainly more than a “mere scintilla” and provides “a substantial basis of fact from which the fact in issue can be reasonably inferred.” McNeel, 869 So.2d at 1018 (¶ 19) (quoting Delta CMI, 586 So.2d at 773). Because the standard of review is limited to whether the Commission’s decision is supported by substantial evidence, and I believe it was, I would affirm.
RANDOLPH, P.J.,.AND PIERCE, J., JOIN THIS OPINION.

. The administrative judge and the Court of Appeals outlined the testimony presented in detail. See Smith v. Tippah Elec. Power Ass'n, 138 So.3d 934 (Miss.Ct.App.2013).