CARLTON, J.,
for the Court:
¶ 1. This appeal stems from two workers’ compensation claims filed by Yvonne Lovett: one arising out of a slip-and-fall injury occurring on March 8, 2006, and a second incident, seven months after Lovett *92 returned to work, where' she suffered a stroke allegedly caused by her employment. The cases were consolidated by order of the administrative judge (AJ).
¶ 2. After a hearing on the merits, the AJ found: (1) Lovett suffered a thirty percent loss of wage-earning capacity due to her slip-and-fall injury; (2) her stroke incident was non-compensable; (3) her medical treatments by Dr. Vaishali Shah and Dr. Abdel Aziz, as well as her evaluation by psychiatrist Dr. Chester Jenkins, were within the chain of referral and thus the financial obligation of her employer, Delta Regional Medical Center, and its insurance carrier; and (4) Lovett’s medical treatments by her neurologist, Dr. Ravi Pande, were not for any conditions caused by her work-related injuries.
¶ 3. Delta Regional appealed the AJ’s order to the full Workers’ Compensation Commission, which reversed the order of the AJ. The Commission held that: (1) Lovett failed to establish a loss of wage-earning capacity due to her slip-and-fall injury; and (2) that her medical treatments by Dr. Aziz, Dr. Shah, and Dr. Jenkins were outside of the chain of referral. The Commission affirmed the AJ’s finding that Lovett’s second claim, stemming from her stroke, was non-compensa-ble. Lovett now appeals, arguing that the Commission erred by denying permanent disability benefits to Lovett. In finding the Commission’s decision not to be against the overwhelming weight of the evidence, but rather supported by the substantial evidence in the record, we affirm the Commission’s findings.
FACTS
¶ 4. On March 8, 2006, Yvonne Lovett slipped and fell in the hallway of Delta Regional Medical Center, resulting in injuries to her back and her right knee. Lo-vett worked at Delta Regional as a security guard. Her duties consisted of securing the premises and serving as law enforcement while on the hospital grounds. Lo-vett’s injuries occurred while performing her usual duties. On the date of her injuries, Lovett claims, the hallway floor had been mopped, but no “Wet Floor” signs were posted to alert her or other hospital patients and visitors.
¶ 5. As a result of her injuries, Lovett received treatment from chiropractor Dr. Harry Dorsey, as well as from Dr. Greg Gober and Dr. Allen Thompson, her family doctor. Lovett’s medical treatment was approved by Delta Regional’s workers’s compensation carrier. Dr. Thompson referred Lovett to Dr. Jack Moriarity, a neurosurgeon in Jackson, Mississippi, who performed a microlumbar discectomy on June 16, 2006, also approved by the workers’s compensation carrier. Dr. Moriarity then referred Lovett to an orthopedic surgeon, Dr. Walter Shelton, for her knee injury. Dr. Shelton performed a surgical repair of her right medial meniscus tear on August 14, 2006. Dr. Moriarity also referred Lovett to Dr. Rahul Vohra, a physical-medicine specialist who treated her for back and knee pain. Dr. Vohra determined that Lovett’s date of maximum medical improvement (MMI) was November 28, 2006. Delta Regional paid for Lovett’s medical treatments, and disability benefits resulting from her injury, until she returned to work.
¶ 6. After the March 8, 2006 injury, Lovett returned to work on October 11, 2006, and continued working through April 28, 2007, implementing physical-work restrictions recommended by her doctors but still complaining of knee pain. At a hospital staff meeting on April 23, 2007, Lovett felt that she had been singled out for criticism of her job duties. Lovett testified that after the meeting, her supervisor *93 sent her home to be off work until they called her.
¶ 7. Lovett returned to full duty to work on the late shift Friday night, April 28, 2007. During this shift, Lovett sought treatment in the hospital emergency room, complaining of dizziness and left-arm weakness. Lovett was treated for “a transient ischemic attack [ (TIA) ] or stroke.”
¶ 8. Lovett received treatment from Dr. Thompson on April 28, 2007, for symptoms of her TIA, as well as for back and right-knee pain, which Lovett described as “chronic.” Dr. Thompson referred Lovett to Dr. Pande for her neurological symptoms, which Dr. Thompson described as questionable multiple sclerosis. Dr. Pande treated Lovett until September 13, 2007. When Dr. Pande released Lovett from his treatment, he confirmed that she had no medical impairments from her TIA and no permanent deficits or injury from her TIA. Lovett also received treatment from Dr. Aziz at the Greenwood Pain Management Clinic and Dr. Shah at the Leflore Specialty Clinic.
¶ 9. Dr. Thompson also referred Lovett to Dr. Chester Jenkins, a psychiatrist, to explain the apparent severity of her pain syndrome, as well as her depression stemming from her failure to recover from her injuries. The medical-treatments summary provided in the record summarized twenty-four consultations with Lovett by Dr. Jenkins, beginning May 2007 and continuing through September 2010, and all verifying chronic pain from her back and knee injuries. Dr. Jenkins provided deposition testimony stating that Lovett’s chronic pain was a significant factor in bringing about her depression. Dr. Jenkins listed the flooding of Lovett’s house and the death of her brother as other contributing factors to her depression. Lovett asserts that since Dr. Thompson referred her to Dr. Jenkins, Dr. Jenkins is clearly in the proper chain of referral, and thus the workers’s compensation carrier should be required to pay for Dr. Jenkins’s treatment of her chronic pain, as well as the depression related to her chronic pain.
¶ 10. Lovett resigned from her job at Delta Regional after her April 2007 TIA. Lovett stated that at the time of her slip- and-fall injury on March 8, 2006, she' earned $9.14 an hour for her job at Delta Regional. Lovett testified that when she returned to work on October 11, 2006, after her slip-and-fall injury, her wage increased to $9.32 an hour, and remained at this amount for the next seven months she worked at Delta Regional before suffering the TIA.
¶ 11. On June 22, 2007, Lovett filed a petition to controvert, alleging that she sustained a work-related injury to her spine, right knee, and leg on March 8, 2006. Lovett also filed a petition to controvert on June 22, 2007, alleging that she suffered a stroke and whole-body injury in the course and scope of her employment on April 28, 2007. The cases were consolidated by order of the AJ.
¶ 12. Delta Regional then obtained the services of Bruce Brawner, a vocational rehabilitation specialist, to perform a vocational evaluation of Lovett on December 9, 2011, to determine her employability and post-wage-earning capacity, and to assist her in finding other gainful employment. Brawner testified that he contacted one hundred employers in the Washington County area for possible job openings within the medical limitations outlines for Lovett by Dr. Vohra. Brawner explained that only twenty-five of these potential employers stated that they had possible openings. Brawner forwarded the job prospects to Lovett’s attorney. Lovett contacted approximately half of the proposed employers and none of them offered her a job. Lovett stated that she also *94 contacted sixty-four employers beforehand, and received no job offers. Brawner testified that after evaluating Lovett, he opined that she possessed the ability to perform the necessary job duties of a security guard. Brawner stated that he disregarded Lovett’s complaints of pain, but clarified that “we certainly hear and consider what the claimants say, but in our field what we have to consider, the bottom line is, what do the doctors say.” Brawner stated that he questioned Lovett’s job-search efforts. The record reflects Lovett admitted that she had already applied for Social Security benefits, and that Lovett now receives Social Security benefits of $992 per month.
¶ 13. A hearing was held on April 10, 2012. The AJ acknowledged that the parties had previously stipulated that the March 8, 2006 work-related injury was compensable, and that all permanent total disability benefits resulting from this injury had been paid to Lovett. The AJ found:
[T]he evidence as a whole including but not necessarily limited to [Lovett’s] age, education, prior work history, impairment, physical restrictions^] and job search effort shows that [Lovett] has suffered a 30% loss of wage[-]earning capacity as a result of her March 8, 2006 work-related injury.
However, the AJ found that the evidence presented at the hearing failed to support a finding of compensability as it relates to the April 28, 2007 TIA diagnosis. The AJ then dismissed the claim stemming from the TIA.
¶ 14. The AJ ordered Delta Regional to pay Lovett compensation benefits for the March 8, 2006 work-related injury as follows: permanent partial disability benefits of $73.60 per week beginning November 8, 2006, and continuing for a period of 450 weeks; all reasonable and necessary medical services and supplies as the nature of her injury and the process of her recovery require, including treatment by Dr. Shah and Dr. Aziz. The AJ stated that Delta Regional is responsible only for the initial evaluation by Dr. Jenkins, and not responsible for the initial evaluation or follow-up medical treatment by Dr. Pande. The AJ explained that Dr. Pande saw Lovett on a referral from Dr. Thompson for questionable multiple sclerosis, and not a work-related injury.
¶ 15. Delta Regional appealed the AJ’s order to the full Commission, which reversed the order of the AJ. The Commission held that: (1) Lovett failed to establish a loss of wage-earning capacity due to her March 8, 2006 injury, noting that Lo-vett returned to work with minimal restrictions, and returned at a higher wage than her pre-injury wage; and (2) her medical treatments by Dr. Aziz, Dr. Shah, and Dr. Jenkins were outside of the chain of referral, observing that Lovett failed to offer proof establishing that her treating physician referred her to Dr. Shah and Dr. Aziz. The Commission affirmed the AJ’s finding that Lovett’s second claim, stemming from her TIA, was non-compensable.
¶ 16. Lovett now appeals, arguing that the Commission erred by denying permanent disability benefits to her. As previously stated, finding that the decision of the Commission is supported by substantial evidence in the record, we affirm.
STANDARD OF REVIEW
' ¶ 17. We will not overturn the Commission’s decision in a workers’ compensation appeal where the decision is supported by substantial evidence. Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1245-47 (Miss.1991). “The [Commission] is the trier and finder of facts in a compensation claim, the findings of the [AJ] to the contrary notwithstanding.” Smith v. Con *95 tainer Gen. Corp., 559 So.2d 1019, 1021 (Miss.1990). We will reverse an order of the Commission “only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence.” Lott v. Hudspeth Ctr., 26 So.3d 1044, 1048 (¶ 12) (Miss.2010) (citing Vance v. Twin River Homes Inc., 641 So.2d 1176, 1180 (Miss.1994)).
¶ 18. In order to receive compensation, the claimant must show that she has a disability as defined by the Mississippi Workers’ Compensation Act. Lott, 26 So.3d at 1048 (¶ 13). “To show that a disability exists, the claimant has the burden of proof to make out a prima facie case of such disability.... The trier of fact must determine whether the claimant has made out a prima facie case based on the evidence presented.” Id. (internal citations omitted).
DISCUSSION
¶ 19. Lovett disputes the Commission’s finding of no loss of wage-earning capacity for her March 8, 2006 injury, arguing that she should be paid permanent disability benefits for the scheduled member injury to her left lower extremity and the whole-body injury to her back. Lovett acknowledges the increase in her hourly rate from $9.14 per hour to $9.32 per hour that she received after returning to work on October 11, 2006, after her March 8, 2006 slip- and-fall injury, but she describes the pay increase as a minuscule eighteen-cent raise from her pre-injury pay. Lovett claims that the Commission used this pay increase as its sole basis for finding no loss of wage-earning capacity even though the medical evidence presented at the hearing supports a finding of loss of wage-earning capacity. She also argues that the stipulated average weekly wages for her March 8, 2006 injury was $368.00, and her stipulated average weekly wages for her April 28, 2007 TIA was $249.68, which Lovett submits actually shows a thirty percent loss of wage-earning capacity.
¶ 20. Delta Regional claims, however, that the Commission’s finding that Lovett failed to incur any permanent disability or loss of wage-earning capacity was based on substantial credible evidence. Delta Regional further argues that since the Commission’s findings were based upon substantial evidence, then we must affirm pursuant to the applicable standard of review. See Walker Mfg. Co., 577 So.2d at 1245-47. Regarding loss of wage-earning capacity, Mississippi law provides a rebuttable presumption that a claimant fails to suffer a loss of wage-earning capacity or permanent disability if that claimant returns to her same or similar employment and earns the same or higher wages following medical treatment and release— which Delta Regional asserts occurred in the present case. Delta Regional also refutes Lovett’s argument that the difference in her average weekly wages pre-injury and post-injury reflects a loss of wage-earning capacity. Delta Regional clarifies that the stipulation of the average weekly wages after Lovett’s TIA was solely for purposes of determining loss of wage-earning capacity if that injury, and that injury alone, was determined to be compensable.
¶21. A review of the applicable and relevant law reflects that disability constitutes “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.” Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1218 (¶31) (Miss.Ct.App.2005) (citing Miss.Code Ann. § 71-3-39(i) (Rev.2000)). Additionally, “[disability is determined by comparing the employee’s pre-injury wages with the *96 employee’s post-injury capacity to earn wages in the open labor market. We also acknowledge that the claimant bears the burden of proof of disability and the extent thereof.” Id. (internal citations omitted).
¶ 22. Relevant to Lovett’s claim of error relating to loss of wage-earning capacity, the Mississippi Supreme Court has established: “A rebuttable presumption of no loss of wage-earning capacity arises when the claimant’s post-injury wages are equal to or exceed his pre[-]injury wage.” Gregg v. Natchez Trace Elec. Power Ass’n, 64 So.3d 473, 476 (¶ 12) (Miss.2011). The supreme court has clarified that this presumption may be rebutted by
evidence on the part of the claimant that the post-injury earnings are unreliable due to: [ (1) ] increase in general wage levels since the time of accident, [(2)] [the] claimant’s own greater maturity and training, [ (3) ] longer hours worked by [the] claimant after the accident, [ (4) ] payment of wages disproportionate to capacity out of sympathy to [the] claimant, and [ (5) ] the temporary and unpredictable character of post-injury earnings.
Id. (emphasis added). “Any factor or condition which causes the actual post-injury wages to become a less reliable indicator of earning capacity will be considered.” Id. See Conley v. City of Jackson, 115 So.3d 908, 912 (¶15) (Miss.Ct.App.2013) (claimant’s pre-injury wage was equal to his post-injury wage; Commission found claimant failed to rebut the presumption of no loss of wage-earning capacity).
¶23. The presumption of no loss of wage-earning capacity that arises when post-injury wages exceed pre-injury wages is codified in Mississippi Code Annotated section 71-3-17(c) (Supp.2013). The Mississippi Supreme Court addressed this presumption in Wilcher v. D.D. Ballard Construction Co., 187 So.2d 308, 310-11 (Miss.1966), when discussing the workers’ compensation statute[1] for ascertaining compensation[2] for a disability:
This statute has been construed by this Court to mean that post-injury earnings equal to or in excess of pre-injury earnings are strong evidence of non-impairment of earning capacity, but that the presumption arising therefrom may be rebutted by evidence on the part of the claimant that the post-injury earnings are unreliable due to: increase in general wage levels since the time of accident, [the] claimant’s own greater maturity and [training], longer hours worked by [the] claimant after the accident, payment of wages disproportionate to capacity out of sympathy to [the] claimant, and the temporary and unpredictable character of post-injury earnings.
See also Gen. Elec. Co. v. McKinnon, 507 So.2d 363, 365 (Miss.1987) (“[Djegree of disability is determined by (1) actual physical injury and (2) loss of wage[-]earning capacity.”).[3] The supreme court acknowledged the distinction between a medical *97 disability and wage-earning capacity. Wil-cher, 187 So.2d at 310. The court established that “[t]he principle that the Commission is the finder of fact and will not be reversed if the finding is supported by substantial evidence is so well established’ in our jurisprudence that citation of authority is not needed.” Id. Additionally, a claimant seeking benefits based on loss of wage-earning capacity who fails to return to work after reaching maximum medical improvement must establish inability to find work in similar or other positions, or that she returned to work for her original employer and was refused reinstatement or rehire. Chestnut v. Dairy Fresh Corp., 966 So.2d 868, 871 (¶ 5) (Miss.Ct.App.2007). See also Lott, 26 So.3d at 1049 (¶ 14) (“In order to determine that an employee is disabled, there must be a finding that ‘the claimant could not obtain work in similar or other jobs and that the claimant’s unemployability was due to the injury in question.’ ”) (citation omitted).
¶24. In applying the relevant law to the claims and evidence before us in the present case, a rebuttable presumption of no loss of wage-earning capacity arose because Lovett’s post-injury wages are “equal to or exceed” her pre-injury wages. As previously stated, Lovett’s pre-injury hourly wage was $9.14 before her March 8, 2006 injury, and her post-injury hourly wage was $9.32, an increase of eighteen cents an hour. The record reflects that the Commission examined other relevant factors in determining whether the legal presumption of no loss of wage-earning capacity was rebutted herein. In so doing, the Commission stated:
[Lovett] has failed to establish that she sustained any loss of wage[-]earning capacity as a result of her March 8, 2006 injury. [Lovett] returned to work with minimal restrictions, and she returned to work at a higher wage than her pre-injury wage.... [Lovett] was released to perform medium duty work. [Brawn-er], a vocational expert, testified that [Lovett] still possessed the physical abilities to perform her work as a security guard, which is considered light duty work.... Further, [Brawner] identified twenty-five job openings in a variety of positions in the Greenville, Mississippi area that are within [Lovett]’s restrictions assigned by Dr. Vohra as well as within [Lovett]’s vocational qualifications and educational background_ [Lo-vett] testified that she did not submit an application with [Delta Regional] for her previous job or any other position after the unrelated TIA episode.
Based on the evidence presented and the applicable law, [Lovett] has failed to rebut the presumption that she has sustained no loss of wage[-]eaming capacity as a result of her March 8, 2006 injury due to her higher post-injury wage. Therefore, we find that [Lovett] did not meet her burden to establish that she suffered any loss of wage[-]earning capacity in regards to her alleged back injury or loss of industrial use in excess of the medical impairment rating in regards to her alleged right lower extremity injury.
¶ 25. The Commission determined that Lovett failed to rebut the presumption that she sustained no loss of wage-earning capacity, and in determining if the Commission erred in such finding, we turn to precedent. To establish loss of wage-earning capacity based upon an inability to find work in the same or similar position, we turn to the analysis in Lott, 26 So.3d at 1050 (¶ 19). In that case, the claimant, Lott, claimed that the Commission was incorrect in finding that Lott failed to meet her burden of proving disability. Id. Lott argued that she applied for or inquired about 194 separate positions and thus performed a diligent job search, enti *98 tling her to permanent total disability benefits. Id. at (¶ 20). The supreme court held:
It is true that a claimant may establish a prima facie case by showing that, despite a reasonable job search, she is unable to find the same or similar employment. However, this Court has held that “[a] conclusion that the employee is disabled rests on a finding that the claimant could not obtain work in similar or other jobs and that the claimant’s unemployability was due to the injury in question.”
Id. at (¶ 19) (internal citations omitted).
¶ 26. The supreme court in Lott also found that “there is substantial evidence that the lack of employment was not due to [Lott’s] injury[,J” recognizing that her doctor released her from treatment without any work restrictions. Id. at (¶ 20). Another physician treating Lott imposed just one restriction — that Lott could only lift a maximum of sixty pounds. Id. After reviewing the record, the Commission ultimately found that Lott was unable to find employment due “to the depressed economic conditions in the area where she lives, and not to the injury itself.” Id. at (¶ 22).
¶ 27. Similarly, in this case, the evidence in the record supports the Commission’s finding that Lovett suffered no loss of wage-earning capacity, after weighing the reasonableness of Lovett’s job search. See id. at (¶ 28). Here, Brawner testified that he found twenty-five jobs for Lovett in the area. The record also reflects that Lovett failed to seek her old position or reapply with Delta Regional for any other position after her TLA.
¶ 28. After reviewing the record, and applying the applicable standard of review, we cannot say that the Commission’s decision was against the overwhelming weight of the evidence, or that the decision was not supported by substantial evidence. Therefore, we affirm the decision of the Commission.
¶ 29. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ„ CONCUR.

. At the time of Wilcher, the workers’ compensation statute was codified in Mississippi Code Annotated section 6998-09(21) (1952). The current version of this statute is now codified in section 71-3-17.

. See Miss.Code Ann. § 71-3-7 (Supp. 2013) (requiring compensation to be payable for a disability for an injury arising out of and in the course of employment).

. See Russell v. Se. Utilities Serv. Co., 230 Miss. 272, 281, 92 So.2d 544, 547 (1957) (The statutory test for determining the loss of wage-earning capacity "is calculated by comparing actual earnings before the injury with earning capacity after the injury."). See also Lanterman v. Roadway Exp., Inc., 608 So.2d 1340, 1347 (Miss.1992); Smith v. Picker Serv. Co., 240 So.2d 454, 456 (Miss.1970); Mosby v. Farm Fresh Catfish Co., 19 So.3d 789, 793-94 (¶¶ 9-10) (Miss.Ct.App.2009).